PETER STIRBA (Bar No. 3118)
MATTHEW STROUT (Bar No. 16732)
**STIRBA, P.C.**
215 South State Street, Suite 750
P.O. Box 810
Salt Lake City, Utah 84110-0810
Telephone: (801) 364-8300
Facsimile: (801) 364-8355
E-mail: peter@stirba.com
E-mail: mstrout@stirba.com

***Attorneys for Defendants, Sherman Sorensen,***
***M.D. and Sorensen Cardiovascular Group***

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., GERALD POLUKOFF, M.D., | |
| Plaintiff/Relator, | **DEFENDANT SHERMAN SORENSEN, M.D.'S OPPOSITION TO PLAINTIFF/RELATOR'S AMENDED MOTION TO DISMISS THE SORENSEN DEFENDANTS' COUNTERCLAIM** |
| v. | |
| ST. MARK'S HOSPITAL, INTERMOUNTAIN HEALTHCARE, INC., INTERMOUNTAIN MEDICAL CENTER, SHERMAN SORENSEN, M.D., SORENSEN CARDIOVASCULAR GROUP, | Case No. 2:16-cv-00304-TS-EJF |
| | Judge Ted Stewart |
| Defendants. | Magistrate Judge Evelyn J. Furse |

Defendant, Sherman Sorensen, M.D., by and through his undersigned counsel,

respectfully submits his Opposition to Plaintiff/Relator's Amended Motion to Dismiss the

Sorensen Defendants' Counterclaim.[1]

---

[1] Plaintiff/Relator misidentifies the Counterclaim as being brought by both Dr. Sorensen and Sorensen Cardiovascular Group. Dr. Sorensen is the only counterclaimant.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

GLOSSARY ......................................................................................................................... vi

INTRODUCTION .................................................................................................................. 1

OBJECTION TO RELATOR'S FACTUAL BACKGROUND ............................................ 2

FACTUAL BACKGROUND ................................................................................................ 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

   I.   DR. SORENSEN'S COUNTERCLAIMS ARE NOT BARRED BY THE STATUTE
   OF LIMITATIONS ........................................................................................................... 6

      a.   The Statute of Limitations for the Contractual Counterclaims Was Equitably Tolled..... 6

      b.   The Statute of Limitations for the Misappropriation of Trade Secrets Claim Was Tolled
         by 28 U.S.C. § 1367(d) ............................................................................................... 9

   II.   THE COUNTERCLAIMS STATE A CLAIM FOR WHICH RELIEF CAN BE
   GRANTED ..................................................................................................................... 11

      a.   Relator is Not Protected by the Judicial Privilege ..................................................... 11

      b.   Relator is Not Protected by the False Claims Act or HIPAA ...................................... 13

      c.   The Trade Secrets Counterclaim Pleads an Actionable Trade Secret, Misappropriation,
         Use, and Injury ........................................................................................................... 16

      d.   The Counterclaim States a Claim for Breach of Implied Covenant of Good Faith and
         Fair Dealing ............................................................................................................... 18

   III.   DR. SORENSEN IS NOT JUDICIALLY ESTOPPED FROM BRINGING HIS
   COUNTERCLAIMS ...................................................................................................... 19

   IV.   DR. SORENSEN'S COUNTERCLAIMS ARE NOT BARRED BY CLAIM
   PRECLUSION ............................................................................................................... 21

      a.   Polukoff I Does Not Preclude Dr. Sorensen's Counterclaim ...................................... 21

      b.   Sorensen I Does Not Preclude Dr. Sorensen's Counterclaim....................................... 22

   CONCLUSION ............................................................................................................... 24

## **TABLE OF AUTHORITIES**

### I.    Cases

*Advanced Recovery Sys., LLC v. Am. Agencies, LLC,*
    2016 WL 6916539  (D. Utah Sept. 28, 2016)................................................................ 17

*Artis v. D.C.,*
    138 S. Ct. 594, 599, 199 L. Ed. 2d 473 (2018) ............................................................ 10

*Berenda v. Langford,*
    914 P.2d 45, 52-53 (Utah 1996)...................................................................................... 7

*Berneike v. CitiMortgage, Inc.,*
    708 F.3d 1141 (10th Cir. 2013) ...................................................................................... 2

*Brokers' Choice of America, Inc v. NBC Universal, Inc.,*
    861 F.3d 1081 (10th Cir. 2017) ...................................................................................... 5

*Butcher v. Gilroy,*
    744 P.2d 311 (Utah Ct. App. 1987) ............................................................................ 6, 7

*CDC Restoration & Const., LC v. Tradesmen Contractors, LLC,*
    2012 UT App 60, 274 P.3d 317 ................................................................................... 16

*CIG Expl., Inc. v. State,*
    2001 UT 37, 24 P.3d 966 ............................................................................................... 6

*Cohen v. Wrapsol Acquisition, LLC,*
    177 F. Supp.3d 1373 (D. Utah 2016).......................................................................... 18

*Davis v. Garrity,*
    2013 WL 5745554 (D. Utah Oct. 23, 2013) ........................................................... 12, 13

*Grynberg v. Koch Gateway Pipeline Co.,*
    390 F.3d 1276 (10th Cir. 2004) ...................................................................................... 2

*In re Hoopiiaina Tr.,*
    2006 UT 53, 144 P.3d 1129. ........................................................................................... 7

*JDS Uniphase Corp. v. Jennings,*
    473 F.Supp.2d 697 (E.D.Va. 2007) ............................................................................. 14

*Jiricko v. Frankenburg Jensen Law Firm,*
    2017 WL 1131902 (D. Utah Feb. 23, 2017).................................................................. 12

*KnowledgePlex, Inc. v. Placebase, Inc.,*
    2008 WL 5245484 (N.D. Cal. Dec. 17, 2008)............................................................. 23

*Lifevantage Corp. v. Domingo*,
    208 F. Supp.3d 1202 (D. Utah 2016) ................................................................. 12

*Myers v. McDonald*,
    635 P.2d 84 (Utah 1981) ...................................................................................... 7

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................... 19

*Oakwood Village LLC v. Albertsons, Inc.*,
    2004 UT 101, 104 P.3d 1226 ............................................................................. 18

*Osterman v. Kasdan*,
    2005 WL 8154990 (C.D. Cal. Mar. 16, 2005) .................................................. 23

*Price v. Armour*,
    949 P.2d 1251 (Utah 1997) ............................................................................... 12

*Robbins v. Oklahoma*,
    519 F.3d 1242, 1247 (10th Cir. 2008) ................................................................. 5

*Russell Packard Dev., Inc. v. Carson*,
    2005 UT 14, 108 P.3d 741 ................................................................................... 7

*Rutherford v. Palo Verde Health Care Dist.*,
    2014 WL 12632901 (C.D. Cal. Apr. 17, 2014) ................................................ 16

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ............................................................................. 5

*Santana v. City of Tulsa*,
    359 F.3d 1241 (10th Cir. 2004) ......................................................................... 23

*Sessions v. Chrysler Corp.*,
    517 F.2d 759 (9th Cir.1975) .............................................................................. 13

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) ........................................................................... 5

*Sorensen v. Polukoff*,
    2018 WL 3637518 (D. Utah July 31, 2018) ..................................................... 10

*Stoll v. Gottlieb*,
    305 U.S. 165 (1938) ........................................................................................... 23

*Total Care Physicians, P.A. v. O'Hara*,
    798 A.2d 1043 (Del. Super. Ct. 2001) .............................................................. 17

*U.S. ex rel. Wildhirt v. AARS Forever, Inc.*,
    2013 WL 5304092 (N.D. Ill. Sept. 19, 2013) ................................................... 15

*United States ex rel. Cieszynski Lifewatch Servs., Inc.*,
    2016 WL 2771798 (N.D. Ill. May 13, 2016) ................................................ 14, 15

*United States ex rel. Polukoff v. St. Mark's Hosp.*,
    895 F.3d 730 (10th Cir. 2018) ...................................................................... 22

*US Bioservices Corp. v. Lugo*,
    595 F. Supp.2d 1189 (D. Kan. 2009) ............................................................ 17

*Walker Drug Co. v. La Sal Oil Co.*,
    902 P.2d 1229 (Utah 1995) ............................................................................ 7

*Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*,
    314 F.3d 501 (10th Cir. 2002) ...................................................................... 21

*Xyngular Corp. v. Schenkel*,
    200 F. Supp. 3d 1273 (D. Utah 2016) .......................................................... 14

*Xyngular v. Schenkel*,
    890 F.3d 868 (10th Cir. 2018) ...................................................................... 14

## II.    Statutes

28 U.S.C. § 1367(d) ...................................................................................... 1, 6, 10
31 U.S.C. § 3730(b)(2) ............................................................................................ 13
UTAH CODE § 78B–2–309(2) ................................................................................... 6
UTAH CODE § 13–24–7 ............................................................................................ 9

## III.    Rules

FED. R. CIV. P. 12(d). ............................................................................................... 2
FED. R. CIV. P. 8(e) ................................................................................................ 13
FED. R. CIV. P. 12(b)(6) ................................................................................... *passim*
FED. R. CIV. P. 8(a) .......................................................................................... 20, 23
FED. R. C.IV. P. 9(b) ........................................................................................ 20, 23

## IV.    Regulations

45 C.F.R. § 164.502(j) ........................................................................................... 15

## <u>GLOSSARY</u>

*Polukoff I*:

"*Polukoff I*" refers to this current *qui tam* action, *United States ex rel. Gerald Polukoff, M.D. v. St. Mark's Hosp. et al*, No. 2:16-cv-00304-JNP-EJF, from the date this case was filed under seal in December 2012, until present.

*Sorensen I*:

"*Sorensen I*" refers to Dr. Sorensen's separate lawsuit brought against Dr. Polukoff and his attorneys, Zabriskie Law Firm, LLC, Rhome Zabriskie, J.D., Fleming Nolen & Jez, LLP, and Rand P. Nolen, J.D. Sherman Sorensen M.D. v. Gerald Polukoff, M.D., et al., No. 2:18-cv-00067-TS. This action was filed on January 19, 2018 and was dismissed with prejudice as to the federal RICO claims and dismissed without prejudice as to the state claims on July 31, 2018. Dkt. 58. This case is currently pending appeal before the Tenth Circuit. No. 18-4210.

## INTRODUCTION

Sherman Sorensen, M.D. ("Dr. Sorensen"), in Defendants' Answer to Relator's Amended Complaint, filed Counterclaims against Plaintiff/Relator Gerald Polukoff, M.D. ("Relator"), alleging two causes of action. *See* Def.'s Counterclaim, Dkt. 248, ¶¶ 61–78. Relator responded by filing an Amended Motion to Dismiss and Supporting Memorandum of Law ("Relator's Amended Motion to Dismiss"). *See* Relator's Am. Mot. to Dismiss, Dkt. 254.

Relator alleges that Dr. Sorensen's counterclaims should be dismissed with prejudice for four reasons. First, Relator asserts that the statute of limitation bars Dr. Sorensen's counterclaims. *Id.* at 1, 5–8. Second, Relator asserts that Dr. Sorensen's counterclaims fail to state a claim for which relief can be granted. *Id.* at 1, 8–14 Third, Relator asserts that Dr. Sorensen's counterclaims should be dismissed because they are barred under the doctrine of judicial estoppel. *Id.* at 1, 14–16. Finally, Relator asserts that Dr. Sorensen's counterclaims are barred by claim preclusion. *Id.* at 1, 16–20.

Dr. Sorensen's counterclaims should not be dismissed. First, Dr. Sorensen's counterclaims are timely because the statute of limitations for each counterclaim was tolled by either the equitable discovery rule or by 28 U.S.C. § 1367(d). Second, Dr. Sorensen's counterclaims state a claim for which relief can be granted because he sufficiently pleads facts that are plausible on their face, and Relator is not immunized from liability by the False Claims Act, the judicial privilege, or HIPAA's safe harbor provision. Third, Dr. Sorensen's counterclaims are not barred under the doctrine of judicial estoppel because he has not taken an inconsistent position. Finally, Dr. Sorensen's claims are not barred by claim preclusion because the elements required for preclusion are not satisfied.

For the reasons set forth below, this Court should deny Relator's Amended Motion to Dismiss.

## OBJECTION TO RELATOR'S FACTUAL BACKGROUND

Dr. Sorensen objects to any facts asserted by Relator that impermissibly rely on matters outside of the allegations of the pleadings. When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court may consider the contents of the complaint or counterclaim and any documents that are referenced therein that are central to the claims at issue. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). A court may also take judicial notice of its own files and records, as well as facts that are a matter of public record. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279, n.1 (10th Cir. 2004). If any other matters outside of the pleadings are presented to, and not excluded by, the court, a Rule 12(b)(6) motion must be treated as one for summary judgment after giving "all parties a reasonable opportunity to present all material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Dr. Sorensen respectfully submits that, in resolving Relator's Amended Motion to Dismiss, it is not necessary for the Court to consider any matters outside of the pleadings that are not referenced therein, or which are not otherwise subject to judicial notice. To the extent that Relator has submitted any extraneous material that would otherwise convert his Rule 12(b)(6) motion into one for summary judgment, such material should be excluded by the Court.

## FACTUAL BACKGROUND

Dr. Sorensen is a former cardiologist who is nationally recognized for his expertise in atrial septal defect ("ASD") and patent foramen ovale ("PFO") closures. *See* Def.'s Counterclaim ¶ 8. Dr. Sorensen began practicing medicine in Utah in 1982, and he formed the

Sorensen Cardiovascular Group ("SCG") in 2006. *Id.* ¶¶ 2, 7. Dr. Sorensen practiced at SCG until he retired in 2011. *Id.* ¶ 32.

In June 2011, Relator signed an Employment Agreement with SCG. *Id.* ¶ 24. The agreement required Relator to abide by the SCG Access and Confidentiality Agreement, to comply with the Health Insurance Portability and Accountability Act ("HIPAA"), and to adhere to the SCG Compliance Policies and Procedures. *Id.* ¶ 27. Since Relator was training under Dr. Sorensen and did not have the necessary hospital privileges to perform ASD or PFO closures, Relator did not independently perform those procedures. *Id.* ¶ 29. Because Relator was not providing independent medical care, he was not given authorization to access SCG's patient medical or billing records. *Id.* ¶ 30.

In or around July 2011, Dr. Sorensen decided that he would retire in December 2011 for health reasons. *Id.* ¶ 32. Recognizing that the term of Relator's Employment Agreement was for a minimum of one year, Dr. Sorensen told Relator that he would either pay the remaining balance of Relator's guaranteed salary, or he would turn the SCG practice over to Relator. *Id.* ¶¶ 33–34. Relator told Dr. Sorensen that he would consider the offer, but that he would need to ensure the financial viability of SCG before he made his decision. *Id.* ¶ 35.

On October 7, 2011, Relator met secretly with TecCon, which was a technical support company that had installed backup hard drives for SCG's computer system. *Id.* ¶¶ 39–40. Relator told TecCon that he would be assuming ownership of SCG when Dr. Sorensen retired, and Relator instructed TecCon to provide him with a backup hard drive containing all of SCG's electronic data to take offsite. *Id.* ¶¶ 41–43. On October 14, 2011, Relator met with TecCon again and instructed TecCon to provide him with remote access to SCG's billing records. *Id.* ¶ 45. Relator was not authorized to meet with TecCon, and these meetings took place without Dr.

Sorensen's knowledge or consent. *Id.* ¶¶ 40, 45. Relator obtained the hard drive and remote

access by falsely claiming that he was taking over the practice when, in reality, Relator had not

accepted Dr. Sorensen's offer and Relator was not authorized to request or obtain a backup hard

drive or to access billing information through any means. *Id.* ¶¶ 35, 40–48.

In early November 2011, Relator declined Dr. Sorensen's offer to assume ownership of

the practice and elected to receive the remainder of his guaranteed salary. *Id.* ¶¶ 49–50. Dr.

Sorensen and Relator therefore executed an Agreement and General Release that terminated

Relator's employment and prohibited him from making any statements that were professionally

or personally disparaging about SCG, Dr. Sorensen, or SCG employees. *Id.* ¶¶ 50, 52. In

exchange for the early termination of the Employment Agreement, Relator was paid a lump sum

of over $200,000. *Id.* ¶ 51.

Shortly thereafter, Dr. Sorensen became aware that Relator had obtained remote access to

SCG's billing records and had accessed them after signing the Agreement and General Release.

*Id.* ¶ 53. Dr. Sorensen therefore called TecCon and instructed them to terminate Relator's remote

access. *Id.* However, neither TecCon nor Relator disclosed to Dr. Sorensen or SCG that Relator

had taken a hard drive which contains confidential, HIPAA-protected records for as many as

10,000 patients. *Id.* ¶¶ 44, 51.

In December 2011, Dr. Sorensen was alerted by SCG staff that a backup hard drive *might*

be missing. *Id.* ¶ 54. But neither TecCon nor the SCG staff could determine whether a hard drive

was actually missing. *Id.* Dr. Sorensen sent an email to Relator asking him if he was aware of

any missing backup hard drive. *Id.* ¶ 55. Relator denied any knowledge of a missing hard drive

and told Dr. Sorensen that he would look through his things, but Relator never informed Dr.

Sorensen whether he "found" it. *Id.* ¶ 55.

4

Without Dr. Sorensen's knowledge, Relator gave the hard drive to his attorneys and made disparaging statements about Dr. Sorensen. *See id.* ¶¶ 58, 75. His attorneys then conveyed the disparaging statements to members of the public and used the confidential patient and business information on the hard drive to solicit Dr. Sorensen's former patients for medical malpractice lawsuits against Dr. Sorensen. *Id.* ¶¶ 56–60, 75. Because of Relator's surreptitious conduct and untrue claim that he did not have the hard drive, Dr. Sorensen did not discover that Relator had, in fact, stolen a hard drive until after Relator filed his Amended Complaint on December 3, 2015. *See id.* ¶ 55–56.

## **STANDARD OF REVIEW**

The standard for deciding motions to dismiss under rule 12(b)(6) is well settled. Courts are to "accept as true all well-pled factual allegations in a complaint [or counterclaim] and view these allegations in the light most favorable to the plaintiff [or counterclaimant]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Courts must also draw all reasonable inferences in favor of the non-moving party. *Brokers' Choice of America, Inc v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). It is a "bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Furthermore, "[a] well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* To survive a Rule 12(b)(6) motion to dismiss, a claim need only be plausible on its face. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

<u>**ARGUMENT**</u>

**I.     DR. SORENSEN'S COUNTERCLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

Relator argues that Dr. Sorensen's counterclaims are barred by the statute of limitations. Am. Mot. to Dismiss at 5–8. That is not so. The statute of limitations for the contractual counterclaims was equitably tolled until December 3, 2015, at the earliest. The statute of limitations for the misappropriation of trade secrets counterclaim was tolled by operation of 28 U.S.C. § 1367(d) until July 31, 2018, at the earliest. Relator's counterclaims were therefore timely filed.

**a.   The Statute of Limitations for the Contractual Counterclaims Was Equitably Tolled**

Dr. Sorensen's contractual counterclaims stem from Relator's theft of the hard drive and his unlawful use and disclosure of the information thereon. Some of this unlawful conduct occurred in 2011, which, according to Relator, means that the six-year statute of limitations for breach of contract actions expired in December 2017. Relator is incorrect. Due to Relator's deceptive conduct and misrepresentations, the statute of limitations was equitably tolled until Relator filed his Amended Complaint on December 3, 2015. Dr. Sorensen therefore had until December 3, 2021 to file his contractual counterclaims.

Under Utah law, the statute of limitations for the breach of a written contract is six years. UTAH CODE § 78B–2–309(2). This six-year limitations period also applies to a breach of the implied duty of good faith and fair dealing when the implied duty is based on a written contract. *CIG Expl., Inc. v. State*, 2001 UT 37, ¶ 19, 24 P.3d 966. The statute of limitations ordinarily begins to run when the breach occurs. *Butcher v. Gilro*y, 744 P.2d 311, 313 (Utah Ct. App.

1987). However, it can be tolled under the "equitable discovery rule." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 24, 108 P.3d 741.

Equitable tolling applies when a party "does not become aware of the cause of action because of the [opposing party's] concealment or misleading conduct." *Id.* ¶ 25 (quoting *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995); *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)). The concealment or misleading conduct need not last for the entire limitations period. A party can invoke the equitable discovery rule even if it discovered, or should have discovered, that it had a potential cause of action before the statute of limitations ran, provided the party "acted reasonably in failing to file suit before the limitations period expired." *Id.* ¶ 30. If the party acted reasonably, the limitations period is tolled until the date the party had actual or constructive knowledge of the facts underlying its claim. *Id.* ¶ 30–31.  Mere inquiry notice is insufficient to end the tolling period. *Id.* ¶ 38 (citing *Berenda v. Langford*, 914 P.2d 45, 52–53 (Utah 1996)). This is a highly fact-dependent analysis that precludes granting a motion to dismiss or summary judgment "in all but the clearest of cases." *Id.* ¶ 39; *Berenda*, 914 P.2d at 54; *In re Hoopiiaina Tr.*, 2006 UT 53, ¶ 37, 144 P.3d 1129, 1141.

Relator's deceptive conduct prevented Dr. Sorensen from having actual or constructive notice that Relator had stolen a hard drive until December 3, 2015, at the earliest. On October 7, 2011, Relator met secretly with TecCon and fraudulently obtained a hard drive containing all of SCG's electronic data. Def.'s Counterclaim ¶¶ 40–43. Dr. Sorensen did not authorize or even know about this meeting, and neither Relator, TecCon, nor anyone else informed Dr. Sorensen that Relator had taken a hard drive. *Id.* ¶¶ 40, 44. Instead, Relator hid the fact that he had unlawfully taken it. *Id.* ¶ 51.

In December 2011, SCG staff told Dr. Sorensen that a backup hard drive *might* be

missing, but neither TecCon nor SCG staff could determine whether one was actually missing.

*Id.* ¶ 54. This may have constituted inquiry notice, but as discussed above, inquiry notice is

insufficient to defeat equitable tolling. In any event, Dr. Sorensen discharged his duty to inquire

into the matter by asking Relator in an email if he knew whether a backup hard drive was

missing. *Id.* ¶ 55. Relator denied any knowledge of a missing hard drive and denied he had one.

*Id.*

With Relator falsely pleading ignorance and TecCon and SCG staff unable to ascertain

whether a hard drive was actually missing, Dr. Sorensen could not have been reasonably

expected to discover the facts forming the basis of his contractual causes of action. In other

words, because of Relator's surreptitious conduct and false statements, Dr. Sorensen could not

have reasonably discovered that Relator had stolen a hard drive, provided the information

thereon to others, or made disparaging statements to others derived from the information on the

hard drive.[2] Relator lied to Dr. Sorensen and did not disclose that he had, in fact, taken a hard

drive with "approximately 8 years of Sorensen billing data" until he filed his Amended

Complaint. *See* Am. Complaint, Dkt. 90, ¶ 141. As referenced above, Relator's Amended

Complaint was filed on December 3, 2015, which was four years into the six-year limitations

period for Dr. Sorensen's contractual counterclaims.

---

[2] Relator argues that Dr. Sorensen "suspected or knew that Relator breached the contract through
unauthorized meetings, 'theft' and 'unauthorized access' of the disputed hard drive in late 2011."
Am. Mot. to Dismiss at 8. Relator cites no allegation in the Counterclaim that supports that
argument. To the contrary, the Counterclaim clearly alleges that Relator's secret meetings with
TecCon, and his theft of the hard drive, were not disclosed to Dr. Sorensen, and that Relator
concealed his misconduct by lying to Dr. Sorensen. *See* Def.'s Counterclaim ¶¶ 40–44, 51, 55.

Accordingly, Dr. Sorensen did not have actual or constructive notice of the facts forming the basis of his contractual counterclaims until two-thirds of the limitations period had elapsed. Moreover, in light of the history of this case, Dr. Sorensen acted reasonably in not filing his counterclaims within the two years left on the statute of limitations. This case has a lengthy procedural history which includes, among other things, numerous motions, a transfer of venue, a dismissal with prejudice, and a reversal on appeal. Notably, Dr. Sorensen and SCG filed a Renewed Motion to Dismiss Relator's Amended Complaint during the limitations period, and a ruling was issued seven months later, on January 19, 2017, which was after the statute of limitations would have expired absent equitable tolling. *See* Dkt. 172, 205. Given the circumstances, it was perfectly reasonable for Dr. Sorensen to await the outcome of the Renewed Motion to Dismiss before expending resources on filing a counterclaim.

In sum, Relator's deceptive conduct prevented Dr. Sorensen from acquiring actual or constructive knowledge of Relator's theft and unlawful use of the hard drive until Relator filed his Amended Complaint on December 3, 2015. Moreover, Dr. Sorensen acted reasonably in not filing his contractual counterclaims by December 2017 because Relator concealed the facts underlying those counterclaims for two-thirds of the limitations period and Dr. Sorensen had a reasonable justification for waiting to file his counterclaims. The statute of limitations was therefore equitably tolled until December 3, 2015, which means that the contractual counterclaims are timely.

### b. The Statute of Limitations for the Misappropriation of Trade Secrets Claim Was Tolled by 28 U.S.C. § 1367(d)

Pursuant to the Utah Uniform Trade Secrets Act, an action for misappropriation must be brought "within three years after the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered." UTAH CODE § 13-24-7. As discussed above,

Dr. Sorensen could not have discovered, by the exercise of reasonable diligence, that Relator had

stolen a hard drive until at least December 3, 2015. This means that, absent tolling, the statute of

limitations would have expired on December 3, 2018. However, pursuant to 28 U.S.C. §

1367(d), the limitations period was tolled when *Sorensen I* was filed.

28 U.S.C. § 1367(d) provides that the limitations period for any claims brought under a

federal court's supplemental jurisdiction "shall be tolled while the claim is pending and for a

period of 30 days after it is dismissed . . . ." As recently held by the United States Supreme

Court, this means that the limitations clock pauses when a state law claim is filed in federal court

and it does not resume until 30 days after those claims are dismissed without prejudice. *Artis v.

D.C.*, 138 S. Ct. 594, 599, 199 L. Ed. 2d 473 (2018).

In *Sorensen I*, Dr. Sorensen brought a cause of action for misappropriation of trade

secrets pursuant to the court's supplemental jurisdiction. *See Sorensen I*, Dkt. 2. The complaint

was filed on January 19, 2018, which is approximately eleven months before the statute of

limitations was set to expire. *See id*. Dr. Sorensen filed an amended complaint on May 14, 2018,

which was also during the limitations period. *See id.* at Dkt. 44. The trade secrets claim, along

with the other state law claims, was dismissed without prejudice on July 31, 2018. *Sorensen v.

Polukoff*, 2018 WL 3637518, at *11 (D. Utah July 31, 2018).

Pursuant to *Artis*, the statute of limitations for the trade secrets claim was tolled when the

original *Sorensen I* complaint was filed on January 19, 2018. The limitations period did not

begin running again until August 30, 2018, which was 30 days after the trade secrets claim was

dismissed without prejudice. Since there was approximately eleven months left in the limitations

period at the time it was tolled, the expiration date of the statute of limitations would have been

on or around July 30, 2019. Dr. Sorensen filed his Counterclaim in the instant case on January 25, 2019, thus his counterclaim for misappropriation of trade secrets is timely.

## II.   THE COUNTERCLAIMS STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Relator argues that the misappropriation of trade secrets counterclaim fails because Dr. Sorensen purportedly does not plead an actionable trade secret, misappropriation, use, or injury. Am. Mot. to Dismiss at 8–14. Relator also claims that he is protected by HIPAA's safe harbor provision. *Id.* In addition, Relator contends that the contractual counterclaims must be dismissed because: (1) Relator's conduct is purportedly protected by the judicial privilege and the False Claims Act; and (2) Dr. Sorensen is purportedly attempting to "re-write" the contracts at issue. *Id.* Relator is incorrect.

### a.   Relator is Not Protected by the Judicial Privilege

The Counterclaim alleges that Relator breached the Agreement and General Release by making "professionally and personally disparaging statements" about Dr. Sorensen and SCG to Relator's attorneys, who then conveyed those statements to the public, including to Dr. Sorensen's former patients. Def.'s Counterclaim ¶¶ 73, 75. Relator argues that he cannot be held liable for those statements because "judicial privilege protects statements made in the course of litigation." Am. Mot. to Dismiss at 12.

Reading all of Dr. Sorensen's allegations together and as a whole, it is reasonable to infer that the above-referenced allegation refers to Relator using the information on the stolen hard drive to concoct disparaging statements about Dr. Sorensen and SCG, which Relator then communicated to his attorneys for the purpose of helping them solicit clients for medical malpractice cases against Dr. Sorensen. *See* Def.'s Counterclaim ¶¶ 39–56 (discussing Relator's theft of the hard drive); *Id.* ¶¶ 58–60 (alleging that Relator disclosed the confidential information

on the hard drive to his attorneys, who used it to create solicitation letters that has led to "numerous medical malpractice lawsuits.").

The judicial privilege does not protect statements an individual makes in an attempt to drum up business for his attorney. In *Price v. Armour*, which was cited by Relator, the Utah Supreme Court stated that an individual is privileged to publish defamatory statements in judicial proceedings "*in which he participates*, if the matter has some relation to the proceeding." *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) (emphasis added). In other words, to qualify for the judicial privilege, the statement must be "made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Jiricko v. Frankenburg Jensen Law Firm*, 2017 WL 1131902, at *3 (D. Utah Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1131894 (D. Utah Mar. 24, 2017). In addition, the statements cannot be "excessively published," or else the judicial privilege is lost. *Lifevantage Corp. v. Domingo*, 208 F. Supp. 3d 1202, 1221 (D. Utah 2016). A publication is "excessive if the statement was published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation . . . ." *Id.* (internal citations omitted).

The solicitation letters were sent to generate potential medical malpractice lawsuits against Dr. Sorensen. Since Relator was not acting in any of the foregoing capacities in those cases, the disparaging statements he made to his attorneys and, indirectly, in solicitation letters to Dr. Sorensen's former patients, are not privileged. Even if Relator made those statements in his capacity as a litigant in this *qui tam* action, the judicial privilege still would not apply because the recipients of the solicitation letters are members of the general public who are not involved in this case. As observed by this Court in *Davis v. Garrity*, a "pleading cannot be a

predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding." *Davis v. Garrity*, 2013 WL 5745554, at *3 (D. Utah Oct. 23, 2013).

For the foregoing reasons, the judicial privilege does not apply to the disparaging statements Relator made to his attorneys and, by extension, to Dr. Sorensen's former patients.[3] In any event, the Counterclaim can be fairly read to allege another breach of contract claim that does not involve the communication of any statements. The Counterclaim alleges that the Employment Agreement required Relator to comply with HIPAA and that Relator unlawfully accessed and stole HIPAA-protected information. *Id.* ¶¶ 27, 77. This misconduct is styled as a breach of the implied covenant of good faith and fair dealing, but mislabeling a cause of action is irrelevant, so long as the pleading party is entitled to relief "under any theory." *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760–61 (9th Cir.1975). *See also* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Since this claim is for accessing and stealing information, the judicial privilege has no application.

### b. Relator is Not Protected by the False Claims Act or HIPAA

Relator contends that, as a *qui tam* relator, he was permitted, and statutorily required, to disclose material information to the federal government, thus the contractual counterclaims are purportedly "unenforceable and/or void against public policy." *See* Am. Mot. to Dismiss at 13–14. Relator also argues that Dr. Sorensen's claim for misappropriation of trade secrets fails because Relator is purportedly protected by HIPAA's safe harbor provision

---

[3] In contrast, Dr. Sorensen does not dispute Relator's argument that, due to judicial privilege, Dr. Sorensen cannot maintain a breach of contract action based on the fact that Relator made disparaging statements in the Amended Complaint.

Relator is not protected by the False Claims Act ("FCA"). The FCA permits actions by private persons, but nothing in the Act immunizes them from liability when they steal confidential information. *See* 31 U.S.C. § 3730(b)(2). In the context of litigation sanctions, this Court has held that a party's unauthorized collection of non-public internal documents saved on a corporate server "was improper for a whistleblower" and that his purported whistleblower activity did "not shield his bad faith conduct." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1319 (D. Utah 2016), *aff'd sub nom. Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018). *See also JDS Uniphase Corp. v. Jennings*, 473 F.Supp.2d 697, 702 (E.D.Va. 2007). The court in *JDS Uniphase Corp.* put it aptly:

> By no means can the [California policy favoring whistleblowing] fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined.

*Id.* Accordingly, Relators bad faith conduct – his theft of the hard drive and his unlawful access, use, and disclosure of confidential information – is not shielded by the fact that he filed an FCA lawsuit.

Even if Relator had not stolen the hard drive or any confidential information, the contractual counterclaims would still not be "unenforceable" or "void against public policy" because they are claims for independent damages. In *United States ex rel. Cieszynski Lifewatch Servs., Inc.,* which is a case cited by Relator, the court observed that "courts have recognized that a *qui tam* defendant may maintain a claim [against a relator] for independent damages; that is, a claim that is not dependent on a finding that the *qui tam* defendant is liable." *United States ex rel. Cieszynski Lifewatch Servs., Inc.,* 2016 WL 2771798, at *3 (N.D. Ill. May 13, 2016). A counterclaim is "independent" when a relator engages in behavior that causes damages that

14

extend beyond exposing the *qui tam* defendant to a *qui tam* lawsuit. *See id.* at *4. This includes damages caused by relators disclosing confidential material to any third party other than the government or relator's counsel, or disclosing that information for any purpose other than to pursue its *qui tam* claim. *See id.* at **3–4. *See also U.S. ex rel. Wildhirt v. AARS Forever, Inc.,* 2013 WL 5304092 (N.D. Ill. Sept. 19, 2013).

In the present case, Relator stole the hard drive and the confidential information on it; disparaged Dr. Sorensen to Relator's attorneys and provided his attorneys with the stolen hard drive for the purpose of helping them solicit clients; and caused defamatory statements derived from the information on the stolen hard drive to be communicated to Dr. Sorensen's former patients. *See* Def.'s Counterclaim ¶¶ 39–44, 49–60, 75. This has caused injury to Dr. Sorensen that extends beyond exposing him to a *qui tam* lawsuit, including wrongfully exposing him to a data breach and medical malpractice lawsuits, as well defaming him in contravention of the Agreement and General Release. *See id.* ¶¶ 58–60, 73, 75. The contractual counterclaims are therefore independent of Relator's FCA allegations and should not be dismissed.

Finally, Relator is not protected by HIPAA. HIPAA's safe harbor provision provides that it is not a violation of HIPAA for a "workforce member" or "business associate" to disclose HIPAA-protected information to their attorney "for the purpose of determining [their] legal options" regarding alleged unlawful or potentially dangerous activity or conditions. 45 C.F.R. § 164.502(j). Relator is not a HIPAA whistleblower because he did not disclose the HIPAA-protected information at issue for the purpose of determining *his* legal options. Rather, he did so to help his attorneys solicit medical malpractice clients. Moreover, Relator retained the hard drive and accessed SCG's HIPAA-protected information after his employment with SCG ended. *See* Def.'s Counterclaim ¶¶ 50–51, 53–55. He was therefore not a "workforce member" or

"business associate" when he disclosed the information. *See Rutherford v. Palo Verde Health Care Dist.*, 2014 WL 12632901, at *12 (C.D. Cal. Apr. 17, 2014) (holding that the plaintiff was not protected by HIPAA's safe harbor provision for whistleblowers because he had left his job with the defendant before disclosing HIPAA-protected information to his attorneys).

### c. The Trade Secrets Counterclaim Pleads an Actionable Trade Secret, Misappropriation, Use, and Injury

To establish a claim for misappropriation of a trade secret, a plaintiff must show: (1) the existence of a trade secret; (2) communication of the trade secret to the defendant under an express or implied agreement limiting disclosure of the secret; and (3) the defendant's use of the secret that injures the proponent. *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 15, 274 P.3d 317. A compilation, such as a compilation of patient identifiers and information, qualifies as a trade secret if it:

> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* ¶ 16.

In the present case, the billing records contain: (1) patient contact information and other personal identifiers; (2) patient demographic information; (3) patient insurance information; (4) patient charges; and (5) summaries of the care provided by SCG to each patient.[4] Def.'s Counterclaim ¶ 11. By virtue of its confidentiality, this information is not generally known to,

---

[4] Relator argues that Dr. Sorensen has not adequately pled that the billing records are trade secrets because "he is unsure about the contents of the disputed hard drive." Am. Mot. to Dismiss at 9. Relator is incorrect. The Counterclaim explicitly alleges that Relator took a "backup hard drive containing the Trade Secrets." Def.'s Counterclaim ¶ 44.

and is not readily ascertainable by, others. *See* Def.'s Counterclaim ¶¶ 11, 44, 63. Moreover, this information could be monetized by other healthcare professionals seeking new patients, or by individuals like Relator who want to help their attorneys solicit clients.

Dr. Sorensen and SCG used reasonable efforts to maintain to secrecy of the information in the billing records. For example, they limited access to employees whose jobs required access to the records. *Id.* ¶ 15. The billing records were password protected and stored on a secure system, and employees were not allowed to remove the records or other confidential information from the office. *Id.* Moreover, when Dr. Sorensen learned that Relator had obtained remote access to the SCG system, he immediately terminated Relator's access. *Id.* ¶ 53. Similarly, after Dr. Sorensen learned that Relator had stolen a hard drive, he demanded that Relator return it. *Id.* ¶ 56.

For the foregoing reasons, the billing records, and the confidential patient information therein, are trade secrets. Indeed, this type of information is regularly protected as a trade secret. *See Advanced Recovery Sys., LLC v. Am. Agencies, LLC*, 2016 WL 6916539, at *9 (D. Utah Sept. 28, 2016) (stating that customer lists are "regularly protected as trade secrets."); *US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1195 (D. Kan. 2009) (holding, with "little difficulty," that reports containing patient identities and other patient information qualified as trade secrets.); *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1054 (Del. Super. Ct. 2001) (holding that bills containing patient addresses, medical diagnoses and treatment codes, and patient insurance information were trade secrets.).

The other elements of misappropriation of trade secrets are also sufficiently pled. There was an "express or implied agreement limiting disclosure" of the billing records. Aside from the fact that Relator was not authorized to access the records in the first place, the Employment

Agreement and HIPAA imposed a duty on Relator to maintain the secrecy of the billing records. *See* Def.'s Counterclaim ¶¶ 27, 30, 43, 65. In addition, Dr. Sorensen has been injured by Relator's use of the billing records: Relator stole the hard drive and disclosed the billing records thereon to his attorneys for the purpose of helping them solicit clients, and this has led to multiple medical malpractice cases being filed against Dr. Sorensen as well as damage to his personal and professional reputation. *See id.* ¶¶ 39–60, 66, 68–70. Accordingly, Dr. Sorensen has stated a claim for misappropriation of trade secrets.

### d.   The Counterclaim States a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Relator claims that Dr. Sorensen is improperly attempting to "use the implied covenant as a catch-all theory to claim relief based on new contractual rights for which he did not bargain." Am. Mot. to Dismiss at 13. That is not so. Under Utah law, each party to a contract "impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *Cohen v. Wrapsol Acquisition, LLC*, 177 F. Supp. 3d 1373, 1378 (D. Utah 2016). In determining whether the implied covenant has been breached, courts assess "whether a party's actions [are] inconsistent with the agreed common purpose and the justified expectations of the other party" based on the contractual language and the course of dealings between the parties. *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226.

Per the Employment Agreement, Relator was hired to perform certain medical services, in exchange for $300,000 per year, plus various benefits. *See* Ex. F to Am. Mot. to Dismiss. Relator was not hired as a manager, billing clerk, or even a physician who would have access to SCG's billing records. *See* Def.'s Counterclaim ¶ 30. Dr. Sorensen therefore justifiably expected that Relator would not access, steal, or disclose those records. Relator intentionally acted

inconsistently with that justified expectation and injured Dr. Sorensen's right to receive the fruits of the employment agreement.

### III.    DR. SORENSEN IS NOT JUDICIALLY ESTOPPED FROM BRINGING HIS COUNTERCLAIMS

The US Supreme Court has held that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not, thereafter, simply because his interests have changed, assume a contrary position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). In determining if judicial estoppel applies, courts look to three non-exclusive factors: (1) Whether a party's later position is "clearly inconsistent" with its earlier one; (2) whether the party has succeeded in persuading a court to accept its earlier position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the other part if not estopped. *Id.* at 750-51. For the reasons set forth below, these factors resolve in favor of Dr. Sorensen, thus his counterclaims are not precluded by judicial estoppel.

Relator argues that Dr. Sorensen's position, that the Court has supplemental jurisdiction over his counterclaims, is inconsistent with his position in *Sorensen I.* Relator points out that in *Sorensen I*, Dr. Sorensen "asked the Court [to] order his state law claims remanded to state court." Am. Mot. to Dismiss at 15. That is of no moment. Dr. Sorensen was simply arguing that if the RICO claims – the only federal law claims that were left in that case, were dismissed, the court should exercise its discretionary authority to decline supplementary jurisdiction because "[t]here would be no reason at all for this Court to exercise supplemental jurisdiction in this matter without the federal claims intact." *See Sorensen I*, Dkt. 56, at 2. It goes without saying that there is an active federal claim in the present case.

19

Relator also contends that in *Sorensen I*, Dr. Sorensen "repeatedly insisted that [*Sorensen I*] was totally unrelated to the *qui tam* action," and that Dr. Sorensen is changing positions by now arguing that this Court has supplemental jurisdiction over his counterclaims.  *See* Am. Mot. to Dismiss at 15–16. Relator has taken Dr. Sorensen's prior position out of context. In *Sorensen I*, Dr. Sorensen asserted that the claims in that action were not compulsory counterclaims to this *qui tam* action, nor were they barred by claim preclusion, because, *inter alia*: (1) there were additional parties in *Sorensen I* who are not parties to this FCA case; and (2) an FCA action is completely different from a RICO action because they require different legal issues to be resolved and factual circumstances to be alleged. *See Sorensen I*, Dkt. 32, at 10–12.[5]

Dr. Sorensen's prior position is not inconsistent with his position that there is supplemental jurisdiction over his counterclaims in this case, particularly because *Sorensen I* involved additional defendants, contained RICO claims, and did not contain a breach of contract claim. Regarding the latter point, Dr. Sorensen's breach of contract claim arises in large part out of Relator unlawfully accessing and stealing HIPAA-protected information from SCG, in violation of the Employment Agreement. Def.'s Counterclaim ¶¶ 27, 77. In *Sorensen I*, however, the claims arose only "out of the Defendants using the stolen hard drive already in their possession . . . ." *See Sorensen I*, Dkt. 32, at 10–12.

In addition to the foregoing, the Court never ruled on whether the claims in *Sorensen I* were compulsory counterclaims or barred by claim preclusion. Accordingly, Dr. Sorensen did not "succeeded in persuading" the court to accept his earlier arguments on those subjects.

---

[5] It is still Dr. Sorensen's position that the claims alleged in the *qui tam* action are different from the federal RICO claims alleged in *Sorensen I*. The FCA and RICO govern different areas of the law, have different pleading standards (FED. R. CIV. P. 8(a)(2) and FED. R. CIV. P. 9(b), respectively), and have completely different elements.

Moreover, Dr. Sorensen has gained no unfair advantage, and Relator has suffered no unfair detriment, as Relator wanted the state law claims in *Sorensen I* to remain in this Court upon dismissal of the RICO claims. *See Sorensen I*, Dkt. 55.

## IV.   DR. SORENSEN'S COUNTERCLAIMS ARE NOT BARRED BY CLAIM PRECLUSION

Relator asserts that Dr. Sorensen's counterclaims are barred by claim preclusion. First, Relator asserts that Dr. Sorensen's claims should be precluded by *Polukoff I*, which is this current action. Relator's Am. Mot. to Dismiss, at 17–18. Second, Relator asserts that Dr. Sorensen's claims are precluded by *Sorensen I* because "Dr. Sorensen cannot repackage his federal RICO claims" into a new counterclaim.[6] *Id.* at 19–20. Relator's assertions are invalid.

For claim preclusion to apply, three elements must to be met: (1) a final judgment on the merits in an earlier action; (2) an identity of the parties or privies in the two suits; and (3) an identity of the cause of action in both suits." *Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*, 314 F.3d 501, 503–04 (10th Cir. 2002).

### a.   Polukoff I Does Not Preclude Dr. Sorensen's Counterclaim

Relator first asserts that this *qui tam* action, *Polukoff I*, precludes Dr. Sorensen from bringing his counterclaims because it was previously dismissed with prejudice. *See* Dkt. 205. There is no merit to this assertion.

Relator next asserts that Dr. Sorensen should be precluded because his counterclaims could have been brought back when this litigation first began in 2015. Relator Am. Mot. to

---

[6] Stirba, P.C. had nothing to do with the drafting and filing of Dr. Sorensen's counterclaims and did not try to "smuggle two state claims into federal court through the longstanding *qui tam* action." Relator's Am. Mot. To Dismiss at 2. Additionally, Holland & Hart was the firm who drafted Dr. Sorensen's counterclaims and copied Stirba P.C.'s pleadings from *Sorensen I*, without the firm's knowledge or permission.

Dismiss at 18. This argument is unavailing. The three elements required for claim preclusion to apply are not met because there is no final judgment on the merits. Although *Polukoff I* was dismissed with prejudice, the Tenth Circuit Court reversed and remanded, reinstating all of Relator's FCA claims. Dkt. 205, 206. *See also United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745–56 (10th Cir. 2018). Generally, a judgment is "final *until reversed in an appellate court* or modified or set aside in the court of its rendition." *Stoll v. Gottlieb*, 305 U.S. 165, 137 (1938) (emphasis added). Because the dismissal of *Polukoff I* was reversed, there is no final judgment.

### b. *Sorensen I* Does Not Preclude Dr. Sorensen's Counterclaim

Relator next asserts that Dr. Sorensen is precluded from bringing his counterclaims because he "cannot repackage the federal claims dismissed with prejudice is *Sorensen I* into a new counterclaim." Relator Am. Mot. to Dismiss at 19. Relator further asserts that "the counterclaims are predicated on more of the same allegations that Dr. Polukoff allegedly violated HIPAA" and that Dr. Sorensen "hopes to try his luck again by repackaging his RICO claim dressed in the trappings of different legal theories." *Id.* at 19–20. These contentions are inaccurate, and Dr. Sorensen is not precluded from bringing his counterclaims because all of the elements for claim preclusion to apply are not met.

As discussed above, claim preclusion requires a final judgment on the merits. It is not disputed that the dismissal of Dr. Sorensen's RICO and HIPAA claims in *Sorensen I* are final judgments on the merits.[7] However, Dr. Sorensen's state law claims, including his claim for misappropriation of trade secrets, were dismissed *without* prejudice because this Court chose not

---

[7] Dr. Sorensen has appealed the dismissal of the RICO claims, but he acknowledges that the dismissal is a final judgment unless the Tenth Circuit Court of Appeals reverses it.

to exercise supplemental jurisdiction over them. Thus, there is no final judgment on the merits for the state law claims. *See Santana v. City of Tulsa*, 359 F.3d 1241, 1246, n. 3 (10th Cir. 2004) ("Generally, a dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits … and this does not have a res judicata effect.") (internal citations omitted). Claim preclusion therefore does not apply. Relator's argument to the contrary is illogical because, in effect, Relator is asking the Court to convert the dismissal without prejudice into a dismissal with prejudice.

In an attempt to get around the lack of a final judgment on the state law claims, Relator argues that the dismissal of the RICO and HIPAA claims in *Sorensen I* bars the counterclaims in the present case. Am. Mot. to Dismiss at 19–20. Relator's argument is not persuasive.  Those claims were dismissed for reasons specific to those causes of action. The HIPAA claim was dismissed on the sole basis that there is no private right of action under HIPAA. *See Sorensen I*, Dkt. 41 at 12. The RICO claims were dismissed because the Court determined that Dr. Sorensen failed to plead, with Rule 9(b) particularity, the "two predicate acts necessary to establish a pattern of racketeering." *Sorensen I*, Dkt. 57 at 6. Specifically, the Court held that Dr. Sorensen did not adequately allege two predicate acts of mail fraud, wire fraud, and/or interstate transportation and receipt of stolen goods. *See id.* at 8–16.

The counterclaims in the present case undisputedly provide for private rights of action. Additionally, they do not require establishing mail fraud, wire fraud, or the interstate transportation and receipt of stolen goods, and they need not be pled with particularity. *See e.g. KnowledgePlex, Inc. v. Placebase, Inc*., 2008 WL 5245484, at *8 (N.D. Cal. Dec. 17, 2008) (Rule 8(a) applies to misappropriation of trade secrets claims); *Osterman v. Kasdan*, 2005 WL 8154990, at *2 (C.D. Cal. Mar. 16, 2005) (same for breach of contract). This, in conjunction with

the fact that the state law claims, including the trade secrets claim, were dismissed without prejudice, compels the conclusion that claim preclusion does not apply.

## CONCLUSION

For the reasons set forth above, Relator's Amended Motion to Dismiss should be denied. Alternatively, Dr. Sorensen respectfully requests that he be given the opportunity to amend his Counterclaim.

Dated: May 8, 2019

Respectfully Submitted,

**STIRBA, P.C.**

By:    /s/ Matthew Strout

PETER STIRBA
MATTHEW STROUT
***Attorneys for Defendants, Sherman Sorensen,***
***M.D. and Sorensen Cardiovascular Group***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2019, I electronically filed the foregoing **OPPOSITION TO PLAINTIFF/RELATOR'S AMENDED MOTION TO DISMISS THE SORENSEN DEFENDANTS' COUNTERCLAIM** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service.

<u>/s/ Matthew Strout</u>
Matthew Strout