IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GERALD POLUKOFF, M.D., <br><br> Plaintiff/Relator, <br><br> vs. <br><br> ST. MARK'S HOSPITAL, SHERMAN SORENSEN, M.D., SORENSEN CARDIOVASCULAR GROUP, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING RELATOR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BY THE SORENSEN DEFENDANTS BASED ON ASSERTED PRIVILEGE (ECF NO. 354)** <br><br> Civil No.: 2:16-cv-00304-TS-EJF <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Evelyn J. Furse |

Before the Court is Relator, Gerald Polukoff, M.D.'s, Motion to Compel Production of Documents Withheld by the Sorensen Defendants Based on Asserted Privilege (ECF No. 354). Having heard oral argument on December 17, 2019 (ECF No. 370), and having considered all of the parties' briefing (ECF Nos. 354, 366, 387, 389), the Court GRANTS the Motion because the Sorensen Defendants failed to meet their burden to show that a privilege protects the withheld documents from disclosure during discovery.

The privilege that the Sorensen Defendants attempt to claim comes from Utah Code sections 26-25-1 and 26-25-3, the state's care review statute.[1] Before turning to the applicability of these privileges in a federal question case, the Court notes the failure

---

[1] One could interpret the privilege log as claiming privilege under Utah Code section 58-13-5(7), Utah's peer review statute (Privilege Log, ECF No. 354-1), but that statute creates immunity from liability and not discovery or evidentiary privileges. Belnap v. Howard, 2019 UT 9, ¶ 19, 437 P.3d 355, 360. The Sorensen Defendants have not offered any basis to read Utah Code section 58-13-5(7) any other way.

1

to establish this privilege as to any of these documents even under state law. The care review privilege authorizes "[a]ny person, health facility, or other organization" to provide enumerated "persons and entities" with a variety of information including "interviews," "reports," "statements," "memoranda," and "other data relating to the condition and treatment of any person." Utah Code Ann. § 26-25-1(1). The entities enumerated are as follows:

> (a) the department and local health departments; (b) the Division of Substance Abuse and Mental Health within the Department of Human Services; (c) scientific and health care research organizations affiliated with institutions of higher education; (d) the Utah Medical Association or any of its allied medical societies; (e) peer review committees; (f) professional review organizations; (g) professional societies and associations; and (h) any health facility's in-house staff committee.

Utah Code Ann. § 26-25-1(2). The providing party may provide this information for only two purposes: "study and advancing medical research, with the purpose of reducing the incidence of disease, morbidity, or mortality," and "the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers." Utah Code Ann. § 26-25-1(3). When a person or entity complies with the statute, "[a]ll information, interviews, reports, statements, memoranda, or other data furnished by reason of [the Confidential Information Release] chapter, and any findings or conclusions resulting from those studies are privileged communications and are not subject to discovery, use, or receipt in evidence in any legal proceeding of any kind or character." Utah Code Ann. § 26-25-3.

The burden of establishing the existence of a privilege is on the party seeking to assert the privilege. Fed. R. Civ. P. 26(b)(5), see also Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984) (noting burden in context of attorney-client privilege

2

and work product protection).  Several of the documents the Sorensen Defendants claim privilege over under the care review privilege contain no indication that they were provided to one of the enumerated entities for the purposes outlined in the care review statute.  The third, fourth, fifth, eighth, ninth, and tenth entries in the privilege log contain insufficient information from which the Court could conclude that the documents were provided to an enumerated entity for the purposes contemplated by Utah Code section 26-25-1.  Therefore, the Sorensen Defendants fail to meet their burden to show these documents are protected from discovery.

The remaining entries in the Sorensen Defendants' privilege log make some mention of peer review but also fail to meet the requirements of the care review statute for other reasons.  Specifically, nothing in the privilege log or the briefing suggests that documents one, two, six, or seven were created or submitted to any of the enumerated entities or that they were submitted for the purpose of any study meant to reduce morbidity or mortality, or for the purposes of evaluation and improvement of hospital and health care.  Counsel for the Sorensen Defendants asserts that the documents relate to Intermountain's septal closure policy and changes to it in addition to the suspension of Dr. Sorensen.  (Sorensen Defs.' Suppl. Opp'n to Pl.'s Mot. to Compel (Suppl. Opp'n) 7, ECF No. 387).  Policy development and disciplinary documents do not appear to fall under the care review privilege.  Further, the Utah courts have held that the care review privilege applies only to documents specifically prepared to be submitted for care review purposes, and not to any and all medical documents prepared by hospital personnel, despite their tangential relationship to improvement of hospital care.  <u>Wilson v. IHC Hosps., Inc.</u>, 2012 UT 43, ¶ 113, 289 P.3d 369, 399 (citing <u>Benson v. I.H.C. Hosps.,</u>

3

Inc., 866 P.2d 537, 540 (Utah 1993)). The party asserting the care review privilege must provide an adequate evidentiary basis that the documents were prepared specifically to be submitted for review purposes. Wilson, 289 P.3d at 399. Simply put, the Sorensen Defendants failed to indicate that any of the remaining documents were prepared specifically for care review. The Sorensen Defendants have not provided the necessary evidentiary basis, despite the opportunity for additional briefing, instead choosing to make conclusory statements that the privilege applies. (Suppl. Opp'n, ECF No. 387 at 6–7.) To the extent a care review privilege does exist in federal court, it does not protect these documents.

Even if the Sorensen Defendants' care review privilege claims did supply the necessary evidentiary basis, the vast majority of federal courts addressing the issue have persuasively declined to adopt a federal care review privilege. See United States v. Aurora Health Care, Inc., 91 F. Supp. 3d 1066, 1068 (E.D. Wis. 2015) (listing district and circuit courts that have declined to recognize a federal peer and/or care review privilege). Federal Rule of Evidence 501 requires that unless contradicted by the Constitution, federal statute, or federal rule, the common law, "as interpreted by United States courts in the light of reason and experience," governs recognition of new federal privileges. Fed. R. Evid. 501. Federal courts should "consider the law of the state . . . in determining whether a privilege should be recognized as a matter of federal law," but should only incorporate that privilege to the extent it is consistent with the federal policies at issue in the case. Mem'l Hosp. v. Shadur, 664 F.2d 1058, 1061–62 (7th Cir. 1981).

The Utah legislature enacted the care review privilege to encourage physicians and healthcare professionals to participate in care review proceedings and provide accurate information for the betterment of hospital and health care. Benson, 866 P.2d at 539. Federal law provides some protections from liability for peer review participants, through the Health Care Quality Improvement Act of 1986; however, the Act does not shield peer review materials from discovery in litigation. 42 U.S.C. §§ 11111–11153. That Congress specifically passed a law to encourage medical care peer review and did not include any type of discovery or evidentiary privilege weighs heavily against finding the existence of one.

Considering the statute under which this case proceeds, the federal False Claims Act provides a mechanism by which private party relators and/or the federal government may sue people or entities who have defrauded the federal government and recover monies fraudulently dispensed. 31 U.S.C. §§ 3729–3732. Notably, the FCA exempts from public disclosure specific information furnished in cooperation with the government but does not carve out any such protection for peer or care review or self-critical analysis materials. 31 U.S.C. § 3729(c). Furthermore, this privilege does not protect documents from discovery in litigation. Adopting such a privilege in healthcare fraud cases but not in other fraud cases like those involving national security and defense contracts or public works contracts makes no sense. The Sorensen Defendants' arguments about encouraging frank internal review to increase public health and safety apply to all of these fields. The Sorensen Defendants have not offered a sufficient reason to draw this line in False Claims Act cases.

Permitting the application of Utah's state-law care review privilege to this FCA case would come with a high cost—specifically, the government, through the relator, would be blocked from accessing evidence potentially pertinent to the alleged fraudulent practices at issue.  On the other hand, the Sorensen Defendants have only generally alleged that failure to recognize the care review privilege federally would damage the process of peer/care review, and do not address how this might occur, or why any potential chilling effect has not already occurred in any of the appellate circuits where the appellate courts have previously declined to recognize a federal peer review privilege.  See Adkins v. Christie, 488 F.3d 1324 (11th Cir. 2007) (declining to recognize a medical peer review privilege in federal civil rights cases); Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001) (declining to recognize a medical peer review privilege in an employment discrimination claim); Mem'l Hosp., 664 F.2d 1058 (refusing to apply medical peer review privilege in an antitrust case).  As such, considering the competing policies at issue, "reason and experience" do not favor recognizing the care review privilege in this case.  Fed. R. Evid. 501.

For the foregoing reasons, the Court GRANTS Relator's Motion to Compel.

DATED this 17th day of January, 2020.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge