IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GERALD POLUKOFF, M.D.,<br><br>Plaintiff/Relator,<br><br>v.<br><br>ST. MARK'S HOSPITAL; INTERMOUNTAIN HEALTHCARE, INC.; INTERMOUNTAIN MEDICAL CENTER; SHERMAN SORENSEN, M.D.; and SORENSEN CARDIOVASCULAR GROUP,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERTS AND MOTION TO STRIKE EXPERT REPORTS<br><br><br>Case No. 2:16-CV-304 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Sherman Sorensen, M.D. and Sorensen Cardiovascular Group's (collectively, "Defendants") Motion to Exclude Experts[1] and Motion to Strike Expert Reports.[2] These motions seek to exclude proposed expert witnesses retained by Plaintiff/Relator Gerald Polukoff, M.D. ("Relator") and their reports submitted to Defendants pursuant to discovery.[3] For the reasons discussed below, the Court will deny both motions.

I. BACKGROUND

This case commenced on December 6, 2012, when Relator filed a qui tam action, alleging that Defendants performed medically unnecessary patent foramen ovale ("PFO") and/or atrial septal defect ("ASD") closures, fraudulently collecting payment from the United States Government in violation of the False Claims Act, 31 U.S.C. §§ 3729–32.[4] The December 3,

---

[1] Docket No. 296.

[2] Docket No. 297.

[3] *See* Docket Nos. 296, 296-1, 297, 297-1, 297-2, 297-3, 297-4, 297-5.

[4] *See* Docket No. 1.

2015 Amended Complaint later replaced the initial complaint.[5] On December 19, 2018, this Court held a Scheduling Conference and received parties' input on how to proceed.[6] On March 20, 2019, Defendants, together with other defendant parties, submitted a Joint Statement of Issues in Advance of March 28 Hearing ("Joint Statement").[7] In this Joint Statement, Defendants argued that discovery should occur in phases, with the first phase focusing on whether claims submitted to the government were "'false,' in that the procedures were not medically necessary."[8] On March 22, 2019, Relator submitted a Status Report and Proposed Scheduling Order objecting to phased discovery.[9] He argued that this case is not complex enough to justify phased discovery[10] and asked that discovery "be scheduled like an ordinary case."[11] In its April 8, 2019 Scheduling Order, this Court set forth a phased discovery schedule, with expert reports regarding the issue of "Standard of Care/Medical Necessity of PFO/ASD Closures in the Medical Community" due first, and expert reports on "all other topics" due about a year later.[12] The Amended Scheduling Order entered on September 13, 2019, updated the first discovery deadline to be November 15, 2019,[13] and left the expert discovery deadline for "all other topics" unchanged as September 29, 2020.[14] Neither party filed objections to this schedule.

---

[5] *See* Docket No. 90.
[6] *See* Docket No. 239.
[7] Docket No. 258.
[8] *See id.* at 2.
[9] Docket No. 260.
[10] *See* Docket No. 260, at 3–9; 260-1.
[11] Docket No. 260, at 4.
[12] *See* Docket No. 262, at 3.
[13] *See* Docket No. 291, at 1.
[14] *See* Docket No. 262, at 3.

On October 3, 2019, before the initial discovery deadline arrived, Defendants filed both their Motion to Exclude Experts and Motion to Strike Expert Reports.[15]  Relator filed his Amended Combined Response to the Motion to Exclude Experts and Motion to Strike Expert Reports on October 18, 2019.[16]  Defendants filed their Reply to the Combined Reponses on October 31, 2019.[17]  On November 18, 2019, Relator submitted exhibit materials[18] that supplemented statements from his proposed experts in the Amended Response.[19]  In light of these new materials, Defendants filed their Amended Replies on November 27, 2019.[20]

## II. STANDARD OF REVIEW

Concerning the admissibility of expert opinion, Federal Rule of Evidence 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.[21]

---

[15] Docket Nos. 296, 297.

[16] Docket No. 320.

[17] Docket No. 334.

[18] Docket No. 349.

[19] Docket No. 320.

[20] Docket Nos. 359, 360.

[21] FED. R. EVID. 702.

Although the standard under Rule 702 is "liberal . . . regarding expert qualifications,"[22] "[t]he proponent of expert testimony bears the burden of showing that the testimony is admissible."[23]

Rule 702 "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."[24] This involves a two-step analysis.[25] The district court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[26] Preliminary questions concerning the qualification of a person to be a witness should be established by a preponderance of proof.[27] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[28]

"Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."[29] However, "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[30]

---

[22] *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-CV-105-TC, 2015 WL 2201715, at *1 (D. Utah May 11, 2015) (quoting *United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir. 1995)).

[23] *Id.* (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)) (alteration in original).

[24] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (quoting *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see generally Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

[25] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

[26] *Id.* (quoting FED. R. EVID. 702).

[27] *Daubert*, 509 U.S. at 592 n.10.

[28] *Nacchio,* 555 F.3d at 1241 (citing *United States v. Rodriguez–Felix,* 450 F. 3d 1117, 1123 (10th Cir. 2006)).

[29] *Rodriguez–Felix,* 450 F. 3d at 1122–23 (citing FED. R. EVID. 702).

[30] *Heer v. Costco Wholesale Corp.*, 589 F. App'x. 854, 862 (10th Cir. 2014) (internal citations omitted).

III.  DISCUSSION

Defendants' Motion to Exclude Experts seeks to exclude four of Relator's five proposed experts—Dr. Michael J. Diehl, Dr. Alan Richard Maniet, Jr., Dr. Richard Weiss, and Dr. Lawrence Baruch, the four cardiologists.[31]  It does not seek to exclude Dr. Nancy Futrell, a neurologist.[32]  It addresses prong one of Rule 702 regarding qualifications of expert witnesses.

Defendants' Motion to Strike seeks to exclude the expert reports of all five proposed experts.[33]  It addresses prong two of Rule 702, regarding the reliability and relevance of an expert opinion.[34]  Issues regarding the proposed experts' qualifications and the reliability and relevance of their opinions will each be addressed in turn.

It should be noted that Relator argues Defendants' Motion to Strike is improper because DUCivR 7-1(b)(1)(B) states: "Motions to strike evidence as inadmissible are no longer appropriate and should not be filed. The proper procedure is to make an objection."[35]  However, Relator misreads the local rules.  This rule is context specific, not universal, and indicates that a motion to strike is inappropriate in response or reply memoranda.  Rather than including a motion to strike, a party should make an evidentiary objection in its response or reply memoranda.[36]  The present motions are not part of a reply or response.  Therefore, the Court does not find the Motion to Strike improper on those grounds, but rather for the reasons discussed below.

---

[31] *See* Docket No. 296, at 1.

[32] *See id.*

[33] *See* Docket No. 297, at 1.

[34] *See id.*

[35] DUCivR 7-1(b)(1)(B); *see also* Docket No. 320, at 7–8.

[36] *See* DUCivR 7-1(b)(1).

5

A. *Whether Experts are Qualified*

Determining whether an expert is qualified to testify is the first step of a court's two-step analysis as gatekeeper under Rule 702.[37] Defendants seek to exclude four of Relator's five experts on the ground that none of them has experience performing a PFO or ASD closure.[38] Defendants' argument ignores Rule 702's multiple avenues for qualifying someone as an expert—including through "knowledge, skill, experience, training, or education . . . ."[39] Experience—in this case experience performing a particular medical procedure—is not the sole ticket to becoming an expert on issues germane to that procedure. Defendants' omission of Dr. Nancy Futrell from their Motion to Exclude appears a tacit admission of this fact. They seem to understand that neurologists, despite not performing heart surgeries, could qualify to testify through other knowledge or skill relevant to PFO/ASD closures. Similar logic applies to the four cardiologist experts.

Defendants correctly point out that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."[40] This is, however, hardly what Relator's experts attempt to do. Defendants rely heavily on *Ralston*, a case in which the Tenth Circuit upheld a district court's unsurprising decision to disqualify a doctor from testifying as an expert on intramedullary nailing.[41] This was only after the doctor plainly stated that she did "absolutely no research with intramedullary nailing," and she had no other discernible

---

[37] *See Nacchio*, 555 F.3d at 1241.

[38] *See* Docket No. 296, at 2–7.

[39] FED. R. EVID. 702.

[40] *Ralston*, 275 F.3d at 970.

[41] *See id.* at 969–70.

6

knowledge, skill, experience, training, or education on the matter.[42] Such is not the case here. The doctors' curricula vitae indicate their educational and professional qualifications.[43] Relator's Expert Witness List specifies that the cardiologist experts are, among other things, experts in PFO/ASD closures—the specific medical procedures at issue in this case.[44] Their expert reports appear to corroborate this knowledge with information specific to ASD and PFO closures.[45] The supplemental exhibits Relator provided further affirm that his cardiologist experts are

> familiar with the current and historical standard of care for PFO/ASD closures. . . familiar with the risks and benefits associated with those procedures . . . [and these experts' practice in cardiology includes] the consideration and evaluation as to whether a PFO or ASD closure is medically appropriate, reasonable, and necessary for [their] patients.[46]

The Court finds that the information above establishes their qualifications to serve as witnesses in this case by a preponderance of the proof.

Finally, in an apparent attempt to illustrate how deficient Relator's expert reports are, Defendants submit exhibits of their own expert reports for comparison.[47] However, the Court reminds Defendants that "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[48]

---

[42] *See id.* at 969.

[43] *See e.g.*, Docket Nos. 297-1, at 60–63; 297-2, at 16–32; 297-3, at 29–35; 297-4, at 38–46; 297-5, at 19–38.

[44] *See* Docket No. 286, at 2–4.

[45] *See* Docket Nos. 297-1, at 1–48; 297-2, at 1–13; 297-3, at 1–16; 297-4, at 1–29.

[46] Docket Nos. 349-2, 349-3, 349-4, 349-5.

[47] *See* Docket Nos. 296-2, 296-3, 297-6, 297-7, 297-8.

[48] *Heer*, 589 F. App'x. at 862 (internal citations omitted).

This is because "[i]t is solely within the province of the jury to weigh . . . expert testimony."[49] As such, it would be in appropriate for the Court to consider these comparison exhibits in determining whether Relator's experts are qualified to offer expert opinions.

B. *Whether Expert Opinions are Reliable and Relevant*

Defendants note that the Rule 702 "gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."[50] Further, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible."[51] They argue that testimony of all Relator's experts is inadmissible, as these experts apply the wrong standard in their reports.[52] These experts, Defendants contend, discuss the "standard of care" relevant to PFO/ASD closures generally, whereas the applicable standard under the False Claims Act is the "reasonable and necessary" standard as defined in the Medicare Program Integrity Manual.[53] This argument rings hollow.

Under the very definition of "reasonable and necessary" that Defendants reference, a component definition involves what is "appropriate."[54] "Appropriateness" entails whether an item or service was "[f]urnished in accordance with accepted standards of medical practice for

---

[49] *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) (internal quotation marks and citations omitted).

[50] *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003).

[51] *Id.* at 1222 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)).

[52] *See* Docket No. 297, at 2–6.

[53] *See id.*

[54] *See* CMS, *Medicare Program Integrity Manual* § 13.5.4; *see also United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730, 742–43 (10th Cir. 2018) (finding that the CMS Medicare Program Integrity Manual's definition of "reasonable and necessary" is the applicable standard for the present dispute).

the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member."[55] Another component of the definition is whether an item or service "meets, but does not exceed, the patient's medical needs."[56] It makes sense that a discussion by Relator's proposed experts about the "standard of care" for PFO/ASD closures would be a critical element of the broader discussion concerning what was "reasonable and necessary" for False Claims Act purposes.

In addition, the supplemental exhibits Relator provided include brief discussion by each cardiologist expert concerning "whether a PFO or ASD closure is medically appropriate, reasonable, and necessary,"[57] referencing the False Claim Act's "reasonable and necessary" standard.

Having reviewed the reports of Drs. Diehl, Maniet, Weiss, Baruch, and Futrell, as well as the parties' arguments, the Court finds that each of these doctors had a reasonable basis for reaching their conclusions regarding PFO/ASD closures. Any perceived weaknesses in their analyses go to the weight rather than admissibility of opinion and should be addressed through cross-examination.

---

[55] *See United States ex rel. Polukoff*, 895 F.3d at 742–43.

[56] *See id.*

[57] *See* Docket Nos. 349-2, 349-3, 349-4, 349-5.

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Exclude Experts (Docket No. 296) and Motion to Strike Expert Reports (Docket No. 297) are DENIED.

DATED this 3rd day of June 2020.

BY THE COURT:

Ted Stewart
United States District Judge