IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GERALD POLUKOFF, M.D.,<br><br>                Plaintiff/Relator,<br><br>v.<br><br>ST. MARK'S HOSPITAL; INTERMOUNTAIN HEALTHCARE, INC.; INTERMOUNTAIN MEDICAL CENTER; SHERMAN SORENSEN, M.D.; and SORENSEN CARDIOVASCULAR GROUP,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER DENYING RELATOR'S MOTIONS TO EXCLUDE EXPERTS<br><br><br>Case No. 2:16-CV-304 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff/Relator Gerald Polukoff, M.D.'s ("Relator") twin motions to exclude testimony of Dr. John Lassetter[1] and Dr. Jonathan Tobis[2]—proposed expert witnesses retained by Sherman Sorensen, M.D. and Sorensen Cardiovascular Group (collectively, "Defendants"). For the reasons discussed below, the Court will deny both motions.

I. BACKGROUND

This case commenced on December 6, 2012, when Relator filed a qui tam action, alleging that Defendants performed medically unnecessary patent foramen ovale ("PFO") and/or atrial septal defect ("ASD") closures, fraudulently collecting payment from the United States Government in violation of the False Claims Act, 31 U.S.C. §§ 3729–32.[3] Both parties retained

---

[1] Docket No. 380.

[2] Docket No. 383.

[3] *See* Docket Nos. 1, 90.

experts to opine on the initial subject of discovery, namely the "Standard of Care/Medical Necessity of PFO/ASD Closures in the Medical Community."[4]

On December 30, 2019, Relator filed a Motion to Exclude Testimony of Defendants' Expert Dr. John Lassetter[5] and a Motion to Exclude the Testimony and Opinions of Defendants' Expert Jonathan M. Tobis, M.D.[6] Defendants filed their oppositions to both motions on January 13, 2020,[7] and Relator filed replies to both on January 27, 2020.[8]

## II. STANDARD OF REVIEW

Concerning the admissibility of expert opinion, Federal Rule of Evidence 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.[9]

---

[4] *See* Docket No. 262, at 3.
[5] Docket No. 380.
[6] Docket No. 383.
[7] Docket Nos. 395, 396.
[8] Docket Nos. 405, 406.
[9] FED. R. EVID. 702.

Although the standard under Rule 702 is "liberal . . . regarding expert qualifications,"[10] "[t]he proponent of expert testimony bears the burden of showing that the testimony is admissible."[11]

Rule 702 "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."[12]  This involves a two-step analysis.[13]  The district court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[14]  Preliminary questions concerning the qualification of a person to be a witness should be established by a preponderance of proof.[15]  Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[16]

"Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."[17]  However, "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[18]

---

[10] *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-CV-105-TC, 2015 WL 2201715, at *1 (D. Utah May 11, 2015) (quoting *United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir. 1995)).

[11] *Id.* (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)) (alteration in original).

[12] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (quoting *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see generally Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

[13] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

[14] *Id.* (quoting FED. R. EVID. 702).

[15] *Daubert*, 509 U.S. at 592 n.10.

[16] *Nacchio,* 555 F.3d at 1241 (citing *United States v. Rodriguez–Felix,* 450 F. 3d 1117, 1123 (10th Cir. 2006)).

[17] *Rodriguez–Felix,* 450 F. 3d at 1122–23 (citing FED. R. EVID. 702).

[18] *Heer v. Costco Wholesale Corp.*, 589 F. App'x. 854, 862 (10th Cir. 2014) (internal citations omitted).

III.  DISCUSSION

A.  Dr. John Lassetter

Relator argues Dr. Lassetter should be excluded because he is both unqualified and his testimony is unreliable under Rule 702.[19]  Each argument is addressed in turn below.

*1.  Qualifications*

Whether Dr. Lassetter is qualified to testify "by knowledge, skill, experience, training, or education' to render an opinion" is the first prong of the court's Rule 702 gatekeeping analysis.[20]  Dr. Lasseter's curriculum vitae shows extensive experience and scholarship in cardiology.[21]  His expert report reveals he has treated many patients with congenital heart defects, including performing some 30 to 40 PFO/ASD closures per year for over a decade.[22]  Given his ample experience and training, the Court finds that Dr. Lassetter is qualified to testify as an expert of cardiology.

However, parts of Dr. Lassetter's opinion may be ripe for challenge, and Relator is free to address them on cross-examination.  For example, Relator may confront Dr. Lassetter's conclusions that fall beyond his expertise.  Dr. Lassetter's expert report states that he was retained "to evaluate and render [his] opinion in regard to whether the closure of patent foramen ovales and/or atrial septal defects for the prevention of stroke meets the government's definition of 'reasonable and necessary.'"[23]  He opines that "Dr. Sorensen met all the criteria set forth by

---

[19] *See* Docket No. 380.

[20] *Nacchio,* 555 F.3d at 1241.

[21] *See* Docket No. 396-1, at 37–42.

[22] *Id.* at 2–3.

[23] *Id.* at 2.

4

CMS and the FDA."[24]  However, Dr. Lassetter also acknowledges that he is not an expert on the Center for Medicare and Medicaid Services (CMS) or Federal Drug Administration (FDA) definitions relevant to the present litigation.[25]  Such gaps are best addressed through cross-examination.

   2. *Reliability*

Relator argues Dr. Lassetter's testimony is unreliable for several reasons.  Specifically, Relator asserts that Dr. Lasseter fails to identify his methodology,[26] his testimony is disconnected from the relevant time period,[27] his opinions are sometimes contradictory,[28] and he falsely claims his conclusions derive from review of a random sample.[29]

Regarding methodology, Dr. Lassetter explains he reviewed medical literature concerning stroke, "the guidelines," and medical records for twenty-five patients.[30]  Further, he "incorporated [his] education, training, expertise and knowledge gained over 27 years of practicing in the field of cardiovascular medicine."[31]  This is sufficient.  As this Court has previously found,

> this case is not a case in which [the expert witness] could have reached his opinions only after performing exacting scientific experiments. Rather, the expert witnesses in this case may give their opinions after evaluating the underlying case based on

---

[24] *Id.* at 28.

[25] Docket No. 380-2, at 9–15 (When asked "Fair to say that you're not an expert on how Medicare deals with safe and effective?" Dr. Lassetter responds "Correct."  Dr. Lassetter similarly states that he is not an expert in how Medicare and the FDA define other key terms relevant to the present False Claims Act litigation.).

[26] *See* Docket No. 380, at 6–7.

[27] *See id.* at 7–8.

[28] *See id.* at 8.

[29] *See id.* at 8–9.

[30] *See* Docket No. 396-1, at 4.

[31] *Id.* at 3.

5

the applicable standard of care. Each expert's experience provides the method of evaluation.[32]

As for questions regarding discrepancies in the relevant time period or alleged contradictions in Dr. Lassetter's report, these are not sufficient grounds for excluding an expert. This Court has previously found that arguments concerning unsupported and even contradictory opinions, like those alleged here, go to the weight rather than admissibility of the opinion.[33] Further, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[34]

Vigorous cross-examination is also the appropriate means to question Dr. Lassetter's claim of random sampling. Dr. Lassetter's representation that he formed his opinion after analyzing "twenty-five randomly chosen patients that Dr. Sorensen treated"[35] has a powerful effect. It invites a fact-finder to infer that Dr. Lassetter's conclusions have some bearing on the broader population of Dr. Sorensen's patients. However, in deposition testimony, Dr. Lassetter states he has "no idea" whether the medical records he reviewed were in fact "randomly chosen."[36] When asked, "[w]ere these just files provided you by the attorney?" Dr. Lassetter

---

[32] *Nat'l Indem. Co. v. Nelson, Chipman & Burt*, No. 2:07–CV–996 TS, 2013 WL 443851, at *2 (D. Utah Feb. 4, 2013).

[33] *Egbert v. Nissan N. Am.*, No. 2:04–CV–00551 PGC, 2006 WL 6503320, at *2 (D. Utah Mar. 1, 2006) ("The court also finds that the plaintiffs have not offered any good reason for doubting that [the expert's] expert opinion is sufficiently reliable to be admitted in this case. They allege 'unsupported and contradictory opinions.' But these arguments all go to the weight to be given to the evidence, not its admissibility.").

[34] *Daubert*, 509 U.S. at 596.

[35] Docket No. 396-1, at 4.

[36] Docket No. 380-2, at 5–6 (When asked how the patients were selected, Dr. Lassetter responds "I have no idea." When asked "In terms of whether this was a statistically sound sample of [Dr. Sorensen's] patients, you had no idea, right?" Dr. Lassetter responds "Correct. . . . As far as I know, it was represented to me that these were randomly chosen patients.")

replies, "yes."[37] Regarding this and other credibility concerns, Relator may wish to raise specific objections to opinion evidence closer to trial through a motion *in limine* and/or explore them on cross examination.

B. Dr. Jonathan Tobis

Relator argues Dr. Tobis' testimony is unreliable because it lacks proper methodology and support. Relator concedes Dr. Tobis is a qualified doctor.[38] He nonetheless criticizes Dr. Tobis' methodology as an expert witness because Dr. Tobis relies heavily on a single textbook reference, did not review documents outside those given him by Defendants' attorneys, does not articulate his methodology for reviewing twenty-five patient records, makes no reference to specific medical records in his summaries, and makes allegedly unsupported statements.[39]

For substantially the same reasons discussed above, these are not proper grounds for exclusion. "To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'"[40] However, when offering an opinion regarding an industry's standard of care, reflecting upon an expert's own experience provides a method of evaluation.[41] Dr. Tobis may rely upon his undisputedly vast experience as a cardiologist to form his opinions. Moreover, Federal Rule of Civil Procedure 26 does not lay out a specific number of references or peer review citations required

---

[37] *Id.* at 5.

[38] *See* Docket No. 383, at 3.

[39] *Id.* at 3–6.

[40] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).

[41] *Nat'l Indem. Co.*, 2013 WL 443851, at *2.

for an expert report.[42]  Finally, as previously noted, any perceived weakness in Dr. Tobis' analysis should go to the weight rather than admissibility of his opinion and should be further addressed through cross-examination.[43]

## IV. CONCLUSION

It is therefore

ORDERED that Relator's Motion to Exclude Testimony of Defendants' Expert Dr. John Lassetter (Docket No. 380) and Motion to Exclude the Testimony and Opinions of Defendants' Expert Jonathan M. Tobis, M.D (Docket No. 383) are DENIED.

It is further ORDERED that Defendants' request for attorney fees is DENIED.

DATED this 17th day of June 2020.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[42] *See* FED. R. CIV. P. 26(a)(2)(B) (setting out requirements for expert reports).

[43] *Egbert*, 2006 WL 6503320, at *2; *Daubert*, 509 U.S. at 596.