**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GERALD POLUKOFF, M.D.,<br><br>       Relator/Plaintiff,<br><br>vs.<br><br>SHERMAN SORENSEN, M.D., and SORENSEN CARDIOVASCULAR GROUP,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING (1) RELATOR'S MOTION FOR LEAVE TO AMEND RELATOR'S THIRD AMENDED COMPLAINT (DOC. NO. 460); (2) THE PARTIES' SHORT FORM DISCOVERY MOTIONS (DOC. NOS. 458, 459, 474, 476, 477); (3) RELATOR'S MOTION FOR LEAVE TO SUPPLEMENT (DOC. NO. 505); AND (4) RELATOR'S MOTION FOR EXTENSION OF EXPERT DEADLINES (DOC. NO. 519)**<br><br>Case No.  2:16-cv-00304-TS-DAO<br><br>Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is (1) Relator's Motion for Leave to Amend Relator's Third Amended Complaint for Damages and Other Relief Under the False Claims Act (31 U.S.C. § 3730) ("Mot. to Am.") (Doc. No. 460); (2) the Sorensen Defendants' Expedited Motion to Quash or Limit Relator's FRCP 45 Subpoena to St. Mark's Hospital ("Mot. to Quash") (Doc. No. 458); (3) Relator's Amended Expedited Motion to Compel Defendants to Produce Responsive Medical Records ("Medical Records Mot.") (Doc. No. 459); (4) Relator's Expedited Motion to Compel Defendant Sherman Sorensen, M.D. to Provide Complete and Responsive Interrogatory Answers ("Dr. Sorensen Interrog. Mot.") (Doc. No. 474); (5) Relator's Expedited Motion to Compel Defendant Sorensen Cardiovascular Group to Provide Complete and Responsive Interrogatory Answers ("SCG Interrog. Mot.") (Doc. No. 476); (6) the Sorensen Defendants' Expedited Motion to Compel Compliance with the Court's Order and Request for Sanctions and Fees

1

("Sorensen Defs.' Mot. to Compel") (Doc. No. 477); and (7) Relator's Emergency Motion Filed Under Seal for Leave to Supplement ("Mot. to Suppl.") (Doc. No. 505).  The court held a hearing on these motions on June 23, 2020 (Doc. No. 509).  The court also considers Relator's Motion to Modify the Court's Prior Order Granting an Extension of Expert Deadlines ("Expert Deadline Mot.") (Doc. No. 519), which was filed after the June 23, 2020 hearing.

Having considered the parties' briefing and argument and for the reasons detailed below, the court (1) GRANTS Relator's Motion to Amend (Doc. No. 460); (2) DENIES the Sorensen Defendants' Motion to Quash (Doc. No. 458); (3) GRANTS the Relator's Medical Records Motion (Doc. No. 459); (4) DENIES the Relator's Dr. Sorensen Interrogatory Motion (Doc. No. 474); (5) DENIES the Relator's SCG Interrogatory Motion; (6) DENIES the Sorensen Defendants' Motion to Compel (Doc. No. 477); (7) DENIES Relator's Motion to Supplement (Doc. No. 505); and (8) GRANTS Relator's Expert Deadline Motion (Doc. No. 519).

## BACKGROUND

In this case, United States of America *ex rel.* Gerald Polukoff, M.D., ("Relator") alleges, among other things, that Defendant Sherman Sorensen, M.D., and Defendant Sorensen Cardiovascular Group ("SCG") (together, the "Sorensen Defendants") submitted claims for patent foramen ovale ("PFO") and atrial septal defect ("ASD") closures and related procedures which were medically unnecessary in violation of the False Claims Act.  (Third Am. Compl. for Damages and Other Relief under the False Claims Act (31 U.S.C. § 3730) ("Third Am. Compl.") ¶ 2, Doc. No. 421.)  The dispute central to the motions before the court is whether the Relator is entitled to hundreds of patient records for alleged false claims that are not associated with

individual patients listed in the Relator's Third Amended Complaint.  (*See, e.g.*, Mot. to Quash 2, Doc. No. 458; Mot. to Am. 5–6, Doc. No. 460.)

The Third Amended Complaint includes a list of approximately 339 patients upon whom Dr. Sorensen allegedly performed PFO/ASD closures.  (*See* Third Am. Compl. ¶ 124, Doc. No. 421.)  The Relator obtained this list of patients from a hard drive he acquired while employed at SCG, which included patient billing data.  (*Id.* ¶ 122; *see also* Mot. to Am. 5, Doc. No. 460.)  In the Third Amended Complaint, the Relator indicated the list of patients and procedures included in the complaint is incomplete because at the time of filing he did not have billing information from Intermountain Medical Center or St. Mark's Hospital, hospitals where Dr. Sorensen performed PFO/ASD closures.  (Third Am. Compl. ¶ 124.)

In June 2019, the Sorensen Defendants obtained a spreadsheet from Intermountain Medical Center listing approximately 920 procedures related to patients upon whom Dr. Sorensen performed PFO/ASD closures that were billed to the federal government between 2002 and 2012.  (Ex. C to Dr. Sorensen Interrog. Mot., Email from M. Strout to G. Brown (Mar. 24, 2020), Doc. No. 474-3 at 2–4.)  Although a version of this spreadsheet was originally produced in the settlement context to the Relator, the Relator first received it outside the settlement context, and in a more complete form, in March 2020.  (Mot. to Am. 6, Doc. No. 460.)  The Relator has since propounded discovery requests regarding these additional patients, included them in his own supplemental discovery responses, and seeks to add them to the operative complaint.[1]

In ruling on these motions, the court takes account of several important dates in the scheduling order.  September 30, 2019 was the last day for parties to move to amend pleadings.

---

[1] On April 22, 2020, the Relator issued a subpoena to the Heart Center seeking, among other things, medical records and billing records for patients that underwent PFO/ASD closures

(Scheduling Order 4, Doc. No. 262.)  Fact discovery ended on June 30, 2020.  (Order Granting

Parties' Joint Mot. for Extension of Deadlines, Doc. No. 432.)  The last day to serve written

discovery was May 27, 2020.  (*Id.*)  Expert discovery was bifurcated between the standard of

care/medical necessity and all other topics.  (Scheduling Order 4, Doc. No. 262.)  Expert reports

on all remaining topics are due on September 5, 2020, and expert discovery is currently

scheduled to close on December 19, 2020.  (Order Granting Relator's Mot. for Extension of

Deadlines for Expert Discovery, Doc. No. 514.)

## DISCUSSION

The court considers the Relator's motion to amend first as the outcome of this motion

informs the remaining discovery motions at issue.

### I.      MOTION FOR LEAVE TO AMEND (DOC. NO. 460)

With his Motion for Leave to Amend Relator's Third Amended Complaint for Damages

and Other Relief under the False Claims Act (31 U.S.C. § 3730) and Memorandum of Law in

Support (Doc. No. 460), the Relator seeks to add approximately 500 patients to the list of those

who allegedly received "medically unnecessary PFO closures and related procedures that were

billed to Medicare, Medicaid, or TRICARE by Sorensen."  (*See* Ex. A to Mot. to Am., Fourth

Am. Compl. for Damages and Other Relief Under the False Claims Act (31 U.S.C. § 3730)

---

performed by Dr. Sorensen between 2002 and 2011.  (Ex. A to Opp'n to Mot. to Quash,
Subpoena 4, Doc. No. 462-1.)  The Relator attached a list of approximately 900 patients to aid
the Heart Center in identifying responsive records.  (*Id.*)  The Relator also included
approximately 500 additional patients, beyond the 339 patients listed in his operative complaint,
in supplementing his responses to the Sorensen Defendants' Interrogatories 6 and 10 on May 8,
2020.  (*See* Sorensen Defs.' Mot. to Compel 2, Doc. No. 477; *see also* Ex. 1 to Sorensen Defs.'
Mot. to Compel, Relator's Third Am. Resps. to Some of the Sorensen Defs.' First Set of
Interrogs., Doc. Nos. 477-1 & 477-2.)  The Relator also seeks to amend his pleading by adding
approximately 500 additional patients to the list of those that allegedly received "medically
unnecessary PFO closures and related procedures that were billed" to federal payees by the
Sorensen Defendants.  (*See* Ex. A, Proposed Fourth Am. Compl. ¶ 124, Doc. No. 460-1.)

("Proposed Fourth Am. Compl.") ¶ 124, Doc. No. 460-1; *see also* Defs.' Opp'n to Relator's Mot.
for Leave to Am. Relator's Third Am. Compl. ("Opp'n to Mot. to Am.") 2, Doc. No. 492.)  The
proposed amendment adds no new causes of action; this is the only proposed change.

      This proposed amendment reflects the Relator's attempt to address the Sorensen
Defendants' argument that the Relator may only obtain discovery related to patients listed in the
Third Amended Complaint.  (*See* Mot. to Am. 10, Doc. No. 460 ("Significantly, Relator's
proposed amendment contains revisions to the billing listing [in] direct response to concerns and
arguments asserted by the Sorensen Defendants about discovery.")  The Sorensen Defendants
have argued repeatedly that patient records related to individuals who are not listed in the
operative complaint are irrelevant and not subject to discovery.  (*See* Mot. to Quash 2–3, Doc.
No. 458) (arguing "patient records not identified in the [Third Amended Complaint]" are
irrelevant); *see also* Sorensen Mot. 3, Doc. No. 477 (seeking an order "limiting Relator to the
patients in the [Third Amended Complaint] with closures" with respect to his discovery
responses).)  At the June 23 hearing, the Relator affirmed his position that it is legally
unnecessary to amend the complaint because not every false claim alleged must be included in
the operative complaint.  He explained that he filed the motion to amend to meet the Sorensen
Defendants' discovery objections head on.  (Tr. of Mot. Hearing 90:6–11, Doc. No. 515.)

      After explaining the rationale for seeking leave to amend in his motion, the Relator
addresses the specific requirements of Rule 15 of the Federal Rules of Civil Procedure.  With
respect to timeliness, he points to the difficulty he has faced in obtaining relevant records from
the Sorensen Defendants.  (Mot. to Am. 6, 9–10, Doc. No. 460.)  He also argues the Sorensen
Defendants will suffer no prejudice because the amendment does not change the nature of the
Relator's allegations: that Dr. Sorensen "performed medically unnecessary PFO closures,
sometimes calling them ASD closures, and that he submitted his billing for reimbursement to

government payers and was paid." (*Id.* at 10.)  In opposition, the Sorensen Defendants argue the motion to amend should be denied based on delay, prejudice, and futility.  (Opp'n to Mot. to Am. 7–9, Doc. No. 492.)

## A.  Leave to Amend Under Rule 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2) provides that once the deadline for amending a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  District courts "should freely give leave [to amend] when justice so requires."  *Id.*  Leave to amend should be denied "only for reasons such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'"  *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A district court's decision to deny leave to amend under Rule 15 falls within its discretion, and the court of appeals will review it only for abuse of discretion.  *Id.*

### 1.  Undue Prejudice

The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  Prejudice typically occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.* at 1208.  It can also arise when "the amendment unfairly affects the

defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (citing *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971)).

The Sorensen Defendants argue the amendment would cause prejudice because it would make the "cost of litigating the underlying claims prohibitive for the remaining Defendants." (Opp'n to Mot. to Am. 9, Doc. No. 492.)  They also claim that "[e]ach patient added to the complaint[] creates a new claim within the action that must be fleshed out."  (*Id.* at 3.)  In addition, the Sorensen Defendants argue the amendment would extend fact discovery and prolong the case.  (*Id.* at 8.)  The Relator disputes that each individual false claim must be included in an operative pleading and submits that his allegations have been clearly set forth from the beginning of the case and remain substantially unchanged with the proposed amendment.  (Reply in Support of Mot. for Leave to Am. Compl. for Damages and Other Relief Under the False Claims Act (31 U.S.C. § 3730) ("Reply to Mot. to Am.") 4, 6–9, Doc. No. 500.)

The court finds the Sorensen Defendants would not suffer undue prejudice if the amendment is allowed.  The allegations in the third and fourth amended complaints are the same, "that Defendant Dr. Sorensen performed medically unnecessary PFO closures, sometimes calling them ASD closures, and that he submitted his billing for reimbursement to government payers and was paid."  (Mot. to Am. 10, Doc. No. 460; *see also* Third Am. Compl. ¶ 124, Doc. No. 421 (including a list of "some of those medically unnecessary PFO closures and related procedures that were billed to Medicare, Medicaid, or TRICARE by [Dr.] Sorensen . . . along with patient account numbers, dates of service, procedure codes and the amounts billed to the federal payer."); Proposed Fourth Am. Compl. ¶ 124, Doc. No. 460-1 (including the same but with additional patients listed).)  The Fourth Amended Complaint does nothing more than provide additional specificity regarding the claims.  *See Advanced Recovery Systems, LLC v. Am. Agencies, LLC*, No. 2:13-cv-283-DAK, 2014 U.S. Dist. LEXIS 156669, at *5 (D. Utah Nov. 4,

2014) (unpublished) (allowing leave to amend because the additional "claims and parties are all interrelated to the original dispute").

Whether or not the court grants the motion to amend, the Sorensen Defendants would need to litigate any potential liability regarding these patients because the Relator is using them as a basis for his claims and, as discussed below, the court finds discovery as to these patients to be independently permissible.  Additionally, to some degree, the Sorensen Defendants' position in discovery that only records of individuals listed in the operative complaint are relevant has necessitated the amendment the Relator seeks.  (*See, e.g.*, Mot. to Quash 2–3, Doc. No. 458 (arguing that "Relator's request for patient records not identified in the [Third Amended Complaint] is overly broad and seeks irrelevant information").)  Given this posture, any prejudice the Sorensen Defendants may suffer is not undue.

### 2.  Undue Delay

"[U]ntimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (internal citations omitted).  The pertinent inquiry is the amount of time between uncovering the facts on which the amendment is based and the time of filing. *See Leatherwood v. Rios*, 705 F. App'x 735, 740 (10th Cir. 2017) (unpublished) ("Leave to amend may also be denied for undue delay when the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

As discussed above, the Relator obtained new versions of a spreadsheet of patient and billing information in March 2020 from the Sorensen Defendants.  A similar spreadsheet, with redacted billing amounts, had been produced initially for settlement purposes.  (Reply to Mot. to Am. 4, Doc. No. 500.)  Although the Sorensen Defendants received the modified version of the spreadsheet containing the billing amounts in 2019, they first produced the spreadsheets to the

Relator outside the settlement context in March 2020.  (*Id.* at 2–4.)  The Relator used this information, as well as other information obtained in discovery, in support of his amended pleading.[2]  (Mot. to Am. 9–10, Doc. No. 460.)  The court finds that while the Relator filed his motion to amend after the deadline, a two-month delay in filing leave to amend justifying the amendment is not undue where the Relator newly obtained access to this information in a more complete form outside the settlement context.

### 3.  Futility of the Proposed Amendment

With regard to futility, the Sorensen Defendants argue that some number of the specific claims listed in the proposed amendment would be barred by the statute of limitations and fail to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  (Opp'n to Mot. to Am. 7–8, Doc. No 492.)[3]  Specifically, they argue the proposed amendment will "add claims that the United States was aware of since this case was initiated and will raise issues related to whether these claims can relate back to avoid a statute of limitations problem."  (*Id.* at 7.)  The Sorensen Defendants maintain that they cannot address the statute of limitations issue

---

[2] The court rejects the Sorensen Defendants' argument that because a version of the spreadsheet at issue was originally produced for settlement purposes, it follows that the information it contained cannot be used—even though properly obtained through later discovery processes. (*See* Opp'n to Mot. to Am. 4, Doc. No. 492.)  *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2009 U.S. Dist. LEXIS 60496, at *39 (D. Kan. July 15, 2009) (unpublished) (declining to recognize a settlement privilege as an exemption "to the general policy of broad discovery"); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 31718, at *17–18 (D. Kan. Apr. 27, 2007) (unpublished) (declining to recognize a settlement privilege and instead determining the discoverability of documents based on relevance).  Moreover, the spreadsheets produced in response to the subpoena were not identical to the spreadsheets used in settlement negotiations, and Intermountain Healthcare's own counsel directed the Relator to obtain the spreadsheets from the Sorensen Defendants.  (Reply to Mot. to Am. 3, Doc. No. 500.)

[3] In their opposition, the Sorensen Defendants questioned whether the Relator was the original source of the information he seeks to add to the complaint.  (Opp'n to Mot. to Am. 7, Doc. No. 492.)  However, the Sorensen Defendants explicitly abandoned this argument during the hearing. (Tr. of Mot. Hearing 100:1–6, Doc. No. 515.)  Consequently, the court does not address it here.

"more fully without knowing the full nature" of the proposed claims.  (*Id.* at 8–9.)  In support of this argument, the Sorensen Defendants filed a notice of supplemental authority citing two cases that analyze the relation-back doctrine in the context of the False Claims Act.[4]  (*See* Notice of Defs.' Suppl. Authorities 1–2, Doc. No. 512) (citing *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019) and *United States ex rel. Gohil v. Aventis, Inc.*, No. 02-2964, 2017 U.S. Dist. LEXIS 3236, at *10–14 (E.D. Pa. Jan. 9, 2017) (unpublished)).)

Next, the Sorensen Defendants argue the Relator's proposed pleading is futile because "each patient creates an entirely new claim arising of a separate occurrence," and the Relator has not plead each required element of a false claim for each new, proposed patient.  (*Id.* at 2–4.)  As an example, they argue the new patients the Relator proposes to add to the complaint cannot be tied to "a false claim for that procedure" billed by Dr. Sorensen to the federal government.  (Opp'n to Mot. to Am. 4, Doc. No. 492.)

In response to these futility arguments, the Relator indicates the applicable statute of limitations is ten years.  He argues this poses no problem with respect to the patients he seeks to add to the complaint.  (Tr. of Mot. Hearing 106:15-22, Doc. No. 515.)  Next, the Relator states that he is not required to "have a billing and medical record in hand for each patient" at the pleading stage.  (Reply to Mot. to Am. 4, Doc. No. 500.)

Notably, the Sorensen Defendants' argument that the new claims sought to be added are inadequately pleaded runs counter to the Tenth Circuit's holding in *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*:

> The federal rules do not require a plaintiff to provide a factual basis for every allegation.  Nor must each allegation, taken in isolation, contain all the necessary information.  Rather, to avoid dismissal under Rules 9(b) and 8(a), plaintiffs need

---

[4] The court does not address the cited cases here, as the Sorensen Defendants' relation-back argument is better suited for a dispositive motion than for a futility determination, as otherwise explained.

> only show that, taken as a whole, a complaint entitles them to relief.  *See, e.g.*,
> *Twombly*, 550 U.S. at 554–56.  The complaint must provide enough information
> to describe a fraudulent scheme to support a plausible inference that false claims
> were submitted.

614 F.3d 1163, 1173 (10th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56

(2007)).  Moreover, the Sorensen Defendants do not claim their statute-of-limitations or

specificity-in-pleading arguments apply to all individuals the Relator proposes to add to the

complaint.  Based on the briefing, the court is uninformed as to which specific patients the

Sorensen Defendants challenge and consequently cannot adequately evaluate their futility

arguments.

Where the parties presented limited arguments on futility, the court finds the question

better suited for dispositive motions.  *See Lambe v. Sundance Mt. Resort*, No. 2:17-cv-00011-

JNP, 2018 U.S. Dist. LEXIS 162268, at \*7–8 (D. Utah Sept. 21, 2018) (unpublished) (declining

to engage in a futility analysis where "the viability of [the new] claim is more appropriately

addressed in the context of a dispositive motion as opposed to a motion for amendment").

Consequently, the court gives this issue little weight and finds the Relator's motion to amend

should not be denied based on undue delay, undue prejudice, or futility.  The court finds the

motion otherwise satisfies the requirements of Rule 15(a)(2).

## B.  <u>Leave to Modify the Scheduling Order Under Rule 16(b)(4)</u>

In addition to considering the Rule 15(a) standard, the court must consider a motion for

leave to amend filed after the deadline under Rule 16(b) of the Federal Rules of Civil Procedure.

Tenth Circuit precedent requires a party seeking to amend a pleading after the deadline to

demonstrate both "(1) good cause for seeking modification [of the scheduling order] under Fed.

R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."  *Gorsuch, Ltd., B.C. v. Wells*

*Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal citations omitted).

Although neither party squarely addresses this requirement, the court finds the Relator has demonstrated good cause to modify the scheduling order.

Rule 16(b)(4) states "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The Tenth Circuit interprets Rule 16 to require a showing that the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch*, 771 F.3d at 1240 (alteration in original) (internal quotation omitted).  A district court's refusal to modify a scheduling order falls within its discretion, and the court of appeals reviews it only for abuse of discretion.  *Id.*  A movant can satisfy this good cause requirement if, for example, it "learns new information through discovery or if the underlying law has changed." *Id.*  However, if a party "knew of the underlying conduct but simply failed to raise [its] claims" earlier, it cannot establish "good cause" under Rule 16.  *Id.*  The moving party must show good cause both for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.  *Birch v. Polaris Indus.*, 812 F.3d 1238, 1248 (10th Cir. 2015).

As justification for moving to amend on May 20, 2020, well after the September 30, 2019 deadline, the Relator contends the Sorensen Defendants have repeatedly obstructed his attempts to obtain relevant patient records.  He explains that the timing of his motion is dictated by the Sorensen Defendants' discovery positions.  (Reply to Mot. to Am. 5, Doc. No. 500; Mot. to Am 5–8, Doc. No. 460.)

The Relator claims he only learned on March 20, 2020 that a more complete spreadsheet of patients who had received PFO/ASD closures and related procedures from Mr. Sorensen between 2002 and 2011 had been produced by Intermountain Medical Center to the Sorensen Defendants in 2019, outside the settlement context.  (*See* Ex. J to Reply to Mot. to Am., Decl. of G. Brown ¶¶ 28–30, Doc. No. 500-3.)  The Relator obtained this spreadsheet from counsel for

the Sorensen Defendants on March 24, 2020.  (*Id.* ¶ 30.)  Unlike the version of the spreadsheet

produced during settlement negotiations, the Relator considered the version produced in the

discovery context to be "fair game" to use as evidence.  (Reply to Mot. to Am. 4, Doc. No. 500.)

The Relator used the information in the spreadsheet, in addition to other medical and billing

information obtained through discovery, to add to the list of patients already included in the

operative complaint.  (Reply to Mot. to Am. 2–3, Doc. No. 500.)  The Relator filed his motion

two months after obtaining the spreadsheet in a non-settlement context.  The Sorensen

Defendants, on the other hand, assert that the motion to amend constitutes undue delay since it

was filed near the end of fact discovery without explanation by the Relator.  (Opp'n to Mot. to

Am., 7–8, Doc. No. 492.)

   Given this timeline, it would not have been feasible, or even possible, for the Relator to

amend the pleading by the September 30, 2019 deadline.  (Scheduling Order 4, Doc. No. 262.)

Consequently, the court finds that good cause exists for the Relator's failure to move to amend

prior to the cutoff date.

   Next, the court considers whether Relator established good cause of the length of time

between learning of the new information warranting amendment and moving to amend.  *See*

*Birch*, 812 F.3d at 1248.  The Relator waited two months to seek leave to amend after obtaining

the Intermountain Medical Center spreadsheets from the Sorensen Defendants.  In the interim,

the Relator continued his attempts to obtain discovery from the Sorensen Defendants about

individuals not listed in the complaint but was met with opposition every time.  (Reply to Mot. to

Am. 8, Doc. No. 500.)  The court finds the Relator's diligence establishes good cause for the

timing of Relator's motion for leave to amend.

   For these reasons, the court GRANTS the Relator's Motion to Amend (Doc. No. 460).

Although the Relator seeks leave to amend after the deadline in the operative scheduling order,

his delay was justified given his diligence in attempting to obtain the records underlying the amendment.  The Relator's motion to amend should not be denied based on undue delay, undue prejudice or futility, and it otherwise satisfies the requirements of Rule 15(a)(2).  The Relator is ORDERED to file his Fourth Amended Complaint (Doc. No. 460-1) within seven days of this order.

## II.    DISCOVERY MOTIONS

As a preliminary matter, the parties' dispute about whether the Relator may seek discovery regarding patients or procedures outside of the operative complaint is largely resolved by the court's grant of the motion to amend.  However, to clarify for purposes of the remaining motions, the court finds discovery is not limited to specific acts pleaded in the operative complaint.

The Relator contends the medical and billing records for individuals not directly listed in the operative complaint are relevant and discoverable and that their production is proportional to the needs of the case.  (*See, e.g.,* Medical Records Mot. 4, Doc. No. 459.)  The Sorensen Defendants, on the other hand, assert that discovery must be limited to the individuals listed in the operative complaint.  (*See* Opp'n to Medical Records Mot. 2, Doc. No. 464.)  However, they provide no authority supporting the argument that discovery cannot extend beyond the operative complaint to uncover facts substantially similar to the underlying allegations.

In deciding a similar discovery question in a False Claims Act case, a court in this district held that "the specific examples of fraudulent behavior pled in the Complaint do not strictly limit discovery to those acts."  *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-cv-00199-JNP-EJF, 2018 U.S. Dist. LEXIS 2329, at *18 (D. Utah Jan. 4, 2018) (unpublished).  Other courts have reached similar holdings, finding, for example, that a relator in a *qui tam* case should not be prevented "from discovering other examples of behavior substantially similar to

those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused." *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 U.S. Dist. LEXIS 136387, at *6 (S.D. Ind. Sept. 24, 2013) (unpublished).

The rules governing discovery also inform this analysis. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." *Id.* All permissible discovery is then measured against the requirements of proportionality, which requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* While the party seeking discovery has the burden of showing relevance, the "party resisting discovery has the burden of showing undue burden or expense." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 381 (D.N.M. 2018).

In evaluating the discovery sought by the Relator in this matter, the question is not which precise individuals are included in the operative complaint, but which patients' records satisfy the requirements of relevance and proportionality under Rule 26 of the Federal Rules of Civil Procedure. To the extent the Relator seeks patient billing and medical records related to PFO/ASD closures and related medical procedures performed by Dr. Sorensen between 2002 and 2011, the court finds these records relevant to the claims asserted by the Relator. The court discusses specific issues of proportionality as necessary below.

**A.** <u>**Sorensen Defendants' Expedited Motion to Quash or Limit Relator's FRCP 45**</u>
<u>**Subpoena to St. Mark's Hospital (Doc. No. 458)**</u>

In their Expedited Motion to Quash or Limit Relator's FRCP 45 Subpoena to St. Marks'

Hospital, the Sorensen Defendants seek to quash a subpoena the Relator issued to the Heart

Center, which requests medical and billing files for approximately 900 patients, the majority of

whom are not listed in the Third Amended Complaint. (Mot. to Quash. 2, Doc. No. 458.)

Alternatively, the Sorensen Defendants seek a protective order limiting the Relator's subpoena to

patients identified in the complaint. (*Id.*) Specifically, the Sorensen Defendants assert that the

records are irrelevant and cannot be produced absent a court order. (*Id.*) The Sorensen

Defendants claim the Relator's subpoena is an inappropriate attempt to circumvent the close of

fact discovery and enlarge the case. (*Id.* at 3.)

In response, the Relator argues the Sorensen Defendants have no standing to quash

Relator's third-party subpoena. (Relator's Resp. in Opp'n to Defs.' Expedited Mot. to Quash or

Limit Relator's FRCP 45 Subpoena to St. Mark's Hospital ("Opp'n to Mot. to Quash") 1, Doc.

No. 462.) He further asserts that the subpoena is relevant and permissible under Rule 26(b), as it

seeks: (1) a copy of any agreement between the Heart Center and Dr. Sorensen regarding storage

and maintenance of medical, billing, and business records of the Sorensen Cardiology Group;

and (2) medical and billing records for patients who underwent PFO/ASD closures performed by

Dr. Sorensen from 2002 to 2011, billed to the federal government, and in the possession of the

Heart Center. (Opp'n to Mot. to Quash 1, Doc. No. 462; *see also* Ex. 1 to Opp'n to Mot. to

Quash, Subpoena, Doc. No. 462-1.) The subpoena includes a partial list of such patients. (Ex. 1

to Opp'n to Mot. to Quash, Subpoena, Doc. No. 462-1.)

The court finds the Sorensen Defendants lack standing to move to quash the subpoena.

Typically, "a party does not have standing to object to a subpoena issued to a third party, unless

the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena." *Johnson v. USANA Health Scis.*, No. 2:17-cv-652-RJS-DBP, 2019 U.S. Dist. LEXIS 198814, at *6 (D. Utah Nov. 15, 2019) (unpublished) (internal quotations omitted).  For example, a party may have a right to challenge a third-party subpoena seeking her employment, banking, or psychiatric records.  *See W. Vision Software v. Process Vision, LLC*, No. 1:12-cv-155-RJS-PMW, 2013 U.S. Dist. LEXIS 50483, at *3–4 (D. Utah Apr. 8, 2013) (unpublished).  A party objecting to the issuance of a third-party subpoena based on a personal right or privilege has the burden of establishing the privilege applies.  *Johnson*, 2019 U.S. Dist. LEXIS 198814 at *7–8 (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw*, 211 F.R.D. 658, 661 (D. Kan. 2003)).

At the hearing and during the meet-and-confer process, the Sorensen Defendants based their claim of standing on the personal right or privilege doctrine because the records were originally prepared and maintained by SCG.  (*See* Ex. 5 to Opp'n to Mot. to Quash, Email from V. Wilde to G. Brown (May 18, 2020), Doc. No. 462-5; *see also* Tr. of Mot. Hearing 11:18–12:1, Doc. No. 515.)  However, this claim is unsupported by case law; the Sorensen Defendants cite no authority for extending the personal right or privilege to the physician who created the patient record.  In the absence of authority supporting this doctrinal extension, the court finds the Sorensen Defendants have no personal privilege over a corporation's business records.  Consequently, the Sorensen Defendants lack standing to challenge the subpoena on these grounds.

Even if the Sorensen Defendants did have standing to move to quash, the court finds the additional grounds they cite for quashing the subpoena to be baseless.  The Sorensen Defendants argue the records cannot be released without a court order, the subpoena is an improper attempt

to circumvent discovery deadlines, and that it seeks irrelevant information. (*See* Mot. to Quash 2–3, Doc. No. 458.)

Addressing these individually, first, to the extent the Sorensen Defendants are correct that the records cannot be released without a court order, the court orders production of the records here. Issues of patient confidentiality are adequately addressed by the Standard Protective Order for the District of Utah which provides mechanisms by which protected health information may be safely disclosed in litigation. *See* DUCivR 26-2(a). (*See also* Ex. C to Opp'n to Mot. to Quash, Letter from P. Stirba to G. Brown (Aug. 26, 2019) at 2, Doc. No. 462-3.)

Second, the Relator's subpoena was timely served on April 27, 2020, before the written discovery deadline of May 27, 2020, so no discovery deadline has been circumvented. (*See* Order Granting Parties' Joint Mot. for Extension of Deadline, Doc. No. 432.) Moreover, the Relator's subpoena to the Heart Center was necessitated in part by the Sorensen Defendants' assertions that medical records for patients on whom Dr. Sorensen performed PTO/ASD closures, and which the Relator repeatedly sought directly from the Sorensen Defendants, were not in their possession. (*See, e.g.*, Ex. G to Medical Records Mot., Letter from V. Wilde to G. Brown (Apr. 23, 2020), Doc. No. 459-7.) Given these facts, the court finds nothing improper about the timing or purpose of the Relator's subpoena.

Third, as discussed above, the court finds the patient records requested in the Heart Center subpoena directly relevant to the claims and defenses in this matter. For these reasons, the court denies the Sorensen Defendants' Expedited Motion to Quash or Limit Relator's FRCP 45 Subpoena to St. Mark's Hospital, (Doc. No. 458), and denies their alternative request for a protective order limiting the scope of the St. Mark's subpoena to patients identified in the Third Amended Complaint.

**B.  Relator's Amended Expedited Motion to Compel Defendants to Produce Responsive Medical Records (Doc. No. 459)**

In his Amended Expedited Motion to Compel Defendants to Produce Responsive Medical Records, (Doc No. 459), the Relator asks the court to compel production of "responsive SCG medical records pertaining to patients undergoing PFO/ASD closures billed to federal insurance programs."  (Medical Records Mot. 1–2, Doc. No. 459.)  The Relator initially requested these records on July 5, 2019 in Request for Production No. 26 ("RFP No. 26"), which sought "all document[s], data compilations, and tangible things" the Sorensen Defendants identified in their Rule 26(a)(1)(A)(ii) initial disclosures that are in the possession, custody, or control of the Sorensen Defendants and may be used to support their claims or defenses.  (*See* Medical Records Mot. 2, Doc. No. 459; *see also* Ex. B to Medical Records Mot., Defs. Sherman Sorensen and SCG's Resps. to Relator's First Reqs. for Produc. 31, Doc. No. 459-2.)  RFP No. 26 referenced the Sorensen Defendants' initial disclosures, which included: "SCG medical records pertaining to PFO/ASD closures performed by Dr. Sorensen on federally insured patients and related tests, imaging studies, and other procedures attendant to those PFO/ASD closures." (*See* Ex. A to Medical Records Mot., Defs. Sherman Sorensen's and SCG's Suppl. Initial Disclosures 4, Doc. No. 459-1.)

The Sorensen Defendants initially produced nothing in response to RFP No. 26, saying it was "vague, ambiguous, and overbroad," and that they did not understand the request.  (Ex. B to Medical Records Mot., Defs. Sherman Sorensen and SCG's Resp. to Relator's First Req. for Prod. 31, Doc. No. 459-2; *see also* Medical Records Mot. 3, Doc. No. 459.)  However, they later produced twenty-five responsive medical records—documents their experts reviewed during the first phase of expert discovery.  (Medical Records Mot. 3, Doc. No. 459.)  After an additional

attempt by the Relator to clarify RFP No. 26,[5] the Sorensen Defendants responded that they had produced all "documents in their possession" and that "additional records are in the possession of the Heart Center."  (Ex. G. to Medical Records Mot., Letter from V. Wilde to G. Brown (Apr. 23, 2020), Doc. No. 459-7.)

In his motion, the Relator contends the Sorensen Defendants have "control of their own medical records stored by the Heart Center," and should have produced responsive documents months ago.  (Medical Records Mot. 3–4, Doc. No. 459.)  Accordingly, the Relator seeks the documents, as well as fees associated with moving to compel their production.  (*Id.*)

In response to the Relator's motion, the Sorensen Defendants explain that the patient files sought are not in their physical possession because all patient files were transferred to the Heart Center when Dr. Sorensen retired.  (Opp'n to Medical Records Mot. 2, Doc. No. 464.)  The Sorensen Defendants also argue the Relator's request for these records lacks proportionality because the production of the records would cost $43,000 to $55,000.  (*Id.* at 2.)  The Sorensen Defendants argue the Relator should bear the cost of obtaining these files.  (*Id.* at 3.)

---

[5] In an attempt to clarify his initial request, the Relator served an Amended Request for Production No. 26 which excerpts the Sorensen Defendants' initial disclosures and indicates that the Relator seeks "all responsive SCG patient medical records for patients who had a PFO or ASD closure procedure performed by Dr. Sorensen that was billed to a federal insurance program . . . from 2002-2011 as identified in the Sorensen Defendants['] Rule 26 Disclosures." (*See* Ex. F to Medical Records Mot., Relator Gerald Polukoff M.D.'s Am. Request for Prod. No. 26 to Defs. Sherman Sorensen, M.D., and SCG 8, Doc. No. 459-6; *see also* Medical Records Mot. 3, Doc. No. 459.)  The Sorensen Defendants objected to the form of the request, treating the request as a meet-and-confer attempt because an amended request for production is not allowable under the Federal Rules of Civil Procedure.  (Ex. G. to Medical Records Mot., Letter from V. Wilde to G. Brown (Apr. 23, 2020), Doc. No. 459-7.)

Additionally, they argue the Relator has the ability to obtain the information from other sources. (*Id.* at 2–3.)

Rule 34(a)(1) of the Federal Rules of Civil Procedure provides that a party may request designated documents in the "responding party's possession, custody, or control," provided the request meets the relevancy and proportionality requirements of Rule 26(b).  Fed. R. Civ. P. 34(a)(1).  "Courts will find documents to be within a party's control if the party has actual possession, custody, control, or the legal right to obtain the documents on demand."  *Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-cv-1283-RJS-DBP, 2013 U.S. Dist. LEXIS 875, at *31 (D. Utah Jan. 2, 2013) (unpublished) (internal quotations omitted).  If a party has "the practical ability to obtain the documents, particularly when the opposing party does not have the same practical ability to do so," courts will also find the documents are within a party's control. *Id.* (internal quotations omitted); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (noting that "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required"); *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516–17 (D. Kan. 2007) ("Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the *legal right to obtain the document on demand*." (internal quotations omitted) (emphasis in original)).

The Sorensen Defendants rely on *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986) in support of their argument that they lack control over records housed at the Heart Center.  (*See* Opp'n to Medical Records Mot. 3, Doc. No. 464.)  The key question in *Afros* was whether a party could compel a subsidiary to produce documents in the possession of its non-party parent corporation.  *Id.* at 129.  In this context, the court found the "nature of the relationship between the party . . . and the non-party with possession of the documents" to be

determinative and analyzed the corporate structure.  *Id.* at 130 (internal quotations omitted). This analysis is inapplicable here, as is the factual circumstance in *Afros* regarding control between a subsidiary and parent corporation.

The evidence before the court suggests the Sorensen Defendants have "possession, custody, or control" of SCG patient files housed at the Heart Center.  *See* Fed. R. Civ. P. 34(a)(1).  Control of the records is indicated by the fact that the Sorensen Defendants' counsel has already accessed at least twenty-five SCG patient files housed at the Heart Center and provided these records to experts in this case.  (*See* Ex. H to Medical Records Mot., 11/22/19 Dep. of John Lassetter, M.D. at 80:12–21, Doc. No. 459-8; *see also* Ex. K to Medical Records Mot., Letter from Eric Schoonvid (May 18, 2020), Doc. No. 459-11 (attaching email correspondence in which counsel for the Heart Center affirms the existence of an agreement under which "Dr. Sorensen would have access to the records should he request them" and states that, pursuant to the agreement, "Dr. Sorensen's counsel has accessed, reviewed, and scanned some of the records").)  The Sorensen Defendants' control over the records is also established by counsel's acknowledgement in an email to the Relator's counsel that while "Dr. Sorensen's medical files . . . are in the custody of St. Mark's Hospital . . . [a]ccess to them, certainly for us, is not the problem."  (Ex. J to Medical Records Mot., Email from R. Nolen to R. Torres (May 22, 2019, 12:05 p.m.), Doc. No. 459-10.)  Finally, the record suggests the Sorensen Defendants have a "legal right to obtain the documents on demand," because of Dr. Sorensen's contractual relationship with the Heart Center.  *See Braun*, 2013 U.S. Dist. LEXIS 875, at *31.  In a letter to the Relator's counsel, the Heart Center's counsel referred to a December 20, 2011 agreement between Dr. Sorensen and the Heart Center, giving Dr. Sorensen access to SCG patient records

"should he request them."[6]  (*See* Ex. K to Medical Records Mot., Letter from Eric Schoonvid (May 18, 2020), Doc. No. 459-11.)

The patient files at issue are relevant to both parties' claims and defenses, as shown by the Sorensen Defendants' reference to the documents in their initial disclosures.  (*See* Ex. A to Medical Records Mot., Defs. Sherman Sorensen's and SCG's Suppl. Initial Disclosures 4, Doc. No. 459-1.)  Given this, the Sorensen Defendants must produce the requested documents, absent a showing of a lack of proportionality.  *See Landry, L.L.C.*, 323 F.R.D. at 380 (indicating that while Rule 26(b) does not state which party must show proportionality, in general, the "party resisting discovery has the burden of showing undue burden or expense").  The Sorensen Defendants argue it would be prohibitively expensive to produce the files.  They also suggest, with respect to the proportionality factor regarding relative access to the relevant information, that the Relator could have obtained the same records from the Heart Center.  (*See* Opp'n to Medical Records Mot. 2, Doc. No. 464 (stating that the "Heart Center has been the custodian of the patient files since 2012" and that the Relator "never requested the files from St. Marks" until his subpoena at the end of discovery).  This position is not well-founded, given their attempts to block the Relator from subpoenaing these same documents from the Heart Center.

The Sorensen Defendants do not analyze the proposed cost in relation to the other proportionality factors such as the "amount in controversy," "the parties' resources," or "the importance of the discovery to the underlying issues."  *See* Fed. R. Civ. P. 26(b)(1).  As such, the court finds the Sorensen Defendants have not shown the production of SCG medical files pertaining to patients undergoing PFO/ASD closures billed to the federal government to be

---

[6] Among other things, the Relator seeks a copy of this agreement in its subpoena to the Heart Center.  (*See* Ex. A to Opp'n to Mot. to Quash, Subpoena, Doc. No. 462-1.)

disproportional to the needs of the case.  To the extent the Sorensen Defendants are concerned about costs, the court directs them to meet and confer with the Relator to discuss the issue of cost-sharing.  It became clear at the June 23 hearing that no offer or request to divide the production costs had been made.  (*See* Tr. of Mot. Hearing at 28:9-19,  33:15–22, Doc. No. 515.)

The court orders the Sorensen Defendants to supplement their response to Request for Production No. 26 by producing all responsive documents, including SCG medical records pertaining to PFO/ASD closures performed by Dr. Sorensen on federally insured patients and related tests, imaging studies, and other procedures attendant to those PFO/ASD closures from 2002 to 2011 within thirty (30) days of the date of this order.  The court orders the parties to meet and confer to discuss the possibility of sharing costs tied to the production of these documents.  Finally, the court denies the Relator's request for fees associated with bringing this motion, finding that while the Sorensen Defendants' objections to the requested production did not ultimately prevail, they were substantially justified.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

### C. Relator's Expedited Motion to Compel Defendant Sherman Sorensen, M.D. to Produce Complete and Responsive Interrogatory Answers (Doc. No. 474)

The Relator's Expedited Motion to Compel Defendant Sherman Sorensen, M.D. to Produce Complete and Responsive Interrogatory Answers, (Doc. No. 474), asks the court to compel Dr. Sorensen to provide complete responses to Interrogatories 21, 22, 23, and 24.  (Dr. Sorensen Interrog. Mot., Doc. No. 474.)  Broadly speaking, Interrogatories 21 and 22 deal with the number of PFO/ASD closures performed and billed to the government, and Interrogatories 23 and 24 deal with Dr. Sorensen's reimbursement from the government for the same procedures.

Specifically, Interrogatories 21 and 22 requested that "[f]rom 2002-2011," Dr. Sorensen provide "the exact total number of transcatheter PFO closure procedures [he] performed on patients that were billed in whole or in part" to the Centers for Medicare and Medicaid Services

(CMS) and TRICARE/CHAMPUS.  The interrogatories indicated that if Dr. Sorensen cannot

provide "an exact number," he should provide an estimate.  (*See* Ex. A to Dr. Sorensen Interrog.

Mot., Def. Sherman Sorensen's Resp. to Relator's Second Set of Interrogs. 2–3, Doc. No. 474-

1.)  Dr. Sorensen objected to both interrogatories as unduly burdensome and overbroad, claiming

it would require "individual review of each patient record" because PFO closures and ASD

closures use the same billing code.  (*Id.* at 2–3.)  Dr. Sorensen also objected that the request is

vague and insufficiently defines "PFO closures."  (*Id.*)  Finally, he argued the Relator has equal

access to this information since the Relator has a hard drive of "patient and billing data as

evidenced by the body of the complaint."  (*Id.*)  Subject to the interposed objections, Dr.

Sorensen estimated that he "performed a few hundred procedures" between 2002 and 2011 and

that some portion of those were billed in full or in part to CMS and TRICARE/CHAMPUS.  (*Id.*)

Interrogatories 23 and 24 requested that "from 2002-2011," Dr. Sorensen provide "the

total exact amount of monetary reimbursement [he] and/or any medical practice [] received from

transcatheter PFO closure procedures [he] performed on patients that were billed in whole or in

part" to CMS or to TRICARE/CHAMPUS.  The requests asked Mr. Sorensen to provide an

estimate if he proved unable to provide an exact number.  (*See* Ex. A to Dr. Sorensen Interrog.

Mot., Def. Sherman Sorensen's Resp. to Relator's Second Set of Interrogs. 3–4, Doc. No. 474-

1.)  Dr. Sorensen objected to Interrogatories 23 and 24 as unduly burdensome because a response

would require "individual review of each patient record," given that PFO closures and ASD

closures use the same billing code.  (Ex. A to Dr. Sorensen Interrog. Mot., Def. Sherman

Sorensen's Resp. to Relator's Second Set of Interrogs. 4–5, Doc. 474-1.)  He also argued the

requests were vague and insufficiently defined "PFO closures."  (*Id.*)  Specifically, with regard

to Interrogatory No. 23, Dr. Sorensen claimed the request was burdensome, given that the

Relator has equal access to this information since he has a hard drive of "patient and billing data

as evidenced by the body of the complaint." (*Id.* at 4.)  Substantively, Dr. Sorensen disclaimed the ability to provide even an estimate of the monetary reimbursement he received for transcatheter PFO closure procedures from CMS or TRICARE/CHAMPUS, since he did not participate in the billing process.  (*Id.* at 4–5.)

In his motion, the Relator argues that because Dr. Sorensen has access to the patient records stored at the Heart Center as well as patient procedure spreadsheets produced by Intermountain Medical Center, he needs to review these records and provide more robust responses.  (Dr. Sorensen Interrog. Mot. 2–3, Doc. No. 474.)  The Relator also contends that Dr. Sorensen has made comparably exacting interrogatory requests of the Relator and should be held to the same standard.  (*Id.* at 3.)

Dr. Sorensen responds that he was not "responsible for billing or maintaining patient records" during his practice and cannot attest to "information he is unfamiliar with."  (Dr. Sherman Sorensen's Resp. to Relator's Expedited Mot. to Compel Def. Sorensen to Provide Complete and Responsive Interrog. Answers 2, Doc. No. 490.)  He also maintains that he cannot distinguish between a PFO closure and all other closures from the records he possesses because all closures used the same billing code.  (*Id.* at 2.)  At the hearing, counsel for Dr. Sorensen clarified that the only billing records Dr. Sorensen can access are those on the hard drive produced by the Relator.  (Tr. of Mot. Hearing 9:13–17, Doc. No. 515.)  Since SCG has closed its doors, neither Dr. Sorensen nor his former employees have access to billing records.  (*Id.*)  Dr. Sorensen also insists that compelling information on the exact number of PFO closures as compared to ASD closures would have little utility at this juncture where the distinction between

ASD and PFO closures requires expert analysis.  (Tr. of Mot. Hearing at 49:19–51:3, Doc. No.

515.)

Rule 33 of the Federal Rules of Civil Procedure allows for interrogatories asking for a

"contention that relates to fact," as the Relator's interrogatories do here.  Fed. R. Civ. P. 33(a)(2).

However, while contention interrogatories are generally allowable, a respondent's objection to

them may be sustained if they require a "laborious, time-consuming analysis," the burden of

which "outweighs the benefit to be gained," particularly if other discovery vehicles better

address the underlying needs identified in the interrogatories.  *IBP, Inc. v. Mercantile Bank*, 179

F.R.D. 316, 321 (D. Kan. 1998).

In this case, requiring Dr. Sorensen to respond further to Interrogatories 21, 22, 23, and

24, would require a time-consuming analysis outweighing any benefit gained.  The Relator seeks

exacting responses from Dr. Sorensen which he is unable to provide with the records currently in

his physical possession.  With regard to Interrogatories 21 and 22, once the Relator receives the

medical records that must be produced under this order, the Relator will have independent access

to the records showing the total number of PFO closures performed.  Put differently, the court's

order will provide a vehicle better addressing the needs identified in the interrogatory: the

records themselves.  With regard to Interrogatories 23 and 24, Dr. Sorensen explained he has no

access to billing records and no knowledge about the particulars of patient billing, both

prerequisites to providing a more specific response.  The exhibits cited by the Relator support

Dr. Sorensen's position.  While the record suggests the Heart Center possesses SCG patient

records, it also suggests the Heart Center is not in possession of billing records.  (*See* Ex. B to

Dr. Sorensen Interrog. Mot., Letter from E. Schoonvid to G. Brown (May 18, 2020), Doc. No.

474-2 (indicating that the Heart Center has "possession of certain SCG medical records" but has

"no knowledge of who was billed for those services and do[es] not know a feasible way to make

such a determination," and further indicating that the Heart Center is not "in possession of any such billing records").  Dr. Sorensen did not just refuse to answer these interrogatories—he provided estimates where possible.

For these reasons, the court denies the Relator's Expedited Motion to Compel Defendant Sherman Sorensen, M.D. to Produce Complete and Responsive Interrogatory Answers (Doc. No. 474).

**D.**  **Relator's Expedited Motion to Compel Defendant Sorensen Cardiovascular Group to Provide Complete and Responsive Interrogatory Answers (Doc. No. 476)**

The Relator's Expedited Motion to Compel Defendant Sorensen Cardiovascular Group to Provide Complete and Responsive Interrogatory Answers (Doc. No. 476) seeks to compel additional responses to Interrogatories 6, 7, 8, and 9 from SCG.

Interrogatories 6 and 7 requested "the exact total amount of monetary reimbursement" that SCG received from PFO closure procedures from 2006 to 2011 billed to TRICARE/CHAMPUS and CMS or, alternatively, SCG's best estimate.  (*See* Ex. A to SCG Interrog. Mot., Def. Sorensen Cardiovascular Group's Resp. to Relator's First Set of Interrogs. 5–8, Doc. No. 476-1.)  SCG objected to these requests as unduly burdensome because they require review of each patient record and seek information equally available to both sides.  (*Id.* at 6–7.)  SCG also argued the requests are vague and ambiguous because they do not sufficiently define PFO closures to distinguish them from other septal defect closures.  (*Id.*)  After interposing these objections, SCG responded that "the exact total amount of monetary reimbursement" received for PFO closures was unknown, as was the exact amount billed to the federal government.  (*Id.* at 6–8.)  SCG also answered that it "was not reimbursed the full

amount billed" for closures but received "an estimated amount of reimbursement per closure [of] approximately $900" during the time period of 2006 to 2011.  (*Id.* at 6–7.)

Interrogatories 8 and 9 requested "the exact total number of transcatheter PFO closure procedures" billed by SCG to CMS and TRICARE/CHAMPUS between 2006 and 2011 or, alternatively, SCG's best estimate.  (*Id.* at 8–9.)  SCG objected that the interrogatories are unduly burdensome and vague and ambiguous.  (*Id.* at 9–10.)  After interposing these objections, SCG responded similarly to both interrogatories, indicating it did not know the exact number of PFO closures billed to CMS or TRICARE/CHAMPUS but it "estimated that Sorensen Cardiovascular Group performed between 220 to 250 transcatheter PFO/ASD closure procedures per year during 2006 to 2011."  (*See* Ex. A to SCG Interrog. Mot., Def. Sorensen Cardiovascular Group's Resp. to Relator's First Set of Interrogs. 8–10, Doc. No. 476-1.)

In his motion, the Relator argues SCG's answers are deficient because it has "access and control over its medical records, billing information, and a copy of the hard drive."  (SCG Interrog. Mot. 2, Doc. No. 476.)  Accordingly, the Relator claims SCG has an obligation to review these records and respond substantively.  (*Id.*)  The Relator also argues that the Sorensen Defendants have made comparably exacting requests of the Relator and that "the rules governing discovery" should "apply equally to both sides."  (*Id.* at 3.)

In response, SCG maintains that its good faith estimates adequately answer the interrogatories, given the state of the available billing records.  (Sorensen Cardiovascular Group's Resp. to Relator's Expedited Mot. to Compel Def. Sorensen Cardiovascular Group to Provide Complete and Responsive Interrog. Answers ("Opp'n to SCG Interrog. Mot.") 2, Doc. No. 489.)  SCG also contends that the Relator's requests "do not inform SCG on what to do with the various abnormalities a cardiologist finds during a closure procedure when the closure is neither an ASD or PFO" and improperly attempts to bucket "complex medical procedures into

one of two categories." (*Id.*)  SCG argues it is not holding the Relator to a double standard by requesting comparably exacting interrogatory responses because the Relator has the burden of proof.  (*Id.* at 2–3.)

The court finds the Relator's requests unduly burdensome.  With regard to Interrogatories 6 and 7, the court agrees SCG cannot feasibly categorize "complex medical procedures" into one of two buckets—either ASD or PFO closures—when part of the Sorensen Defendants' defense is that the underlying medical decisions were not so clear cut and the government allows billing for both procedures.  (Opp'n to SCG Interrog. Mot. 2, Doc. No. 489.)  With regard to Interrogatories 8 and 9, SCG provided good-faith estimates, an alternative allowed by the interrogatories themselves.  This is sufficient where billing records were no longer accessible to SCG once the medical practice closed.  (*See* Tr. of Mot. Hearing at 53:8-9, Doc. No. 515 ("[W]hen they closed the practice, that was the end of all of their billing records.").)  In addition to the good faith estimates provided by SCG, some of the information sought from SCG may be available in the patient records ordered here.  (*See* Tr. of Mot. Hearing at 46:22-47:2, Doc. No. 515 (indicating that the patient records disclosed during the first phase of expert discovery often included federal payee information).)  Federal payment records subpoenaed by the Relator may also provide the information the Relator seeks in his interrogatories to SCG.  (*See, e.g.*, Ex A to Order Granting Relator's Unopposed Mot. Requesting Issuance of Subpoenas to CMS and Utah Medicaid, Subpoena, Doc. No. 475-1.)

For these reasons, the court denies the Relator's Expedited Motion to Compel Defendant Sorensen Cardiovascular Group to Provide Complete and Responsive Interrogatory Answers (Doc. No. 476).

**E.  Sorensen Defendants' Expedited Motion to Compel Compliance with the Court's Order (Doc. No. 448) and Request for Sanctions and Fees. (Doc. No. 477)**

In their Expedited Motion to Compel Compliance with the Court's Order and Request for Sanctions and Fees (Doc. No. 477), the Sorensen Defendants move the court to compel the Relator to provide the specificity required by the court in its April 8, 2020 order (Doc. No. 448), specifically with respect to his responses to Interrogatories 6 and 10.  (Sorensen Defs.' Mot. to Compel 2, Doc. No. 477.)  Additionally, the Sorensen Defendants request an award of fees related to this motion.

Interrogatory 6 states: "Identify each PFO and ASD closure – including patient name, patient date of birth, patient SCG account number, and date of procedure – for which you claim Dr. Sorensen created or made any of the false record(s), document(s), or statement(s) referenced or identified in Interrogatory No 5."  (Ex. 1 to Sorensen Defs.' Mot. to Compel, Relator's Third Am. Resps. to Some of the Sorensen Defs.' First Set of Interrogs. 3, Doc. No. 477-1.)  Interrogatory No. 10 provides: "State the reasons why each PFO/ASD closure, echocardiogram, or other procedure or test that is listed, identified, or referenced in paragraphs 143 and 144 of the Amended Complaint was allegedly medically unnecessary.  Include each individual procedure in your response, including, without limitation, each procedure identified by procedure code."[7]  (Ex. 1 to Sorensen Defs.' Mot. to Compel, Relator's Third Am. Resps. to Some of the Sorensen Defs.' First Set of Interrogs. 30, Doc. No. 477-2.)

In response to an earlier motion to compel related to these interrogatories filed by the Sorensen Defendants (Doc. No. 434), the court ordered the Relator to provide: (1) a "list of all

---

[7] Paragraph 143 of the Amended Complaint is a "listing of those medically unnecessary PFO closures and the related procedures" billed to the federal government.  (Am. Compl. ¶ 143, Doc. No. 90.)  Paragraph 144 contains a "small sample of closure procedures performed by Dr. Sorensen" that did not conform to medical necessity guidelines.  (*Id.* ¶ 144.)

patients receiving a PFO/ASD closure, whose file the Relator claims contains a false record, document, or statement" and (2) "the reasons each procedure referenced in paragraphs 124 and 125 of the Third Amended Complaint was medically unnecessary." [8]  (*See* Order Granting Sorensen Defs.' Expedited Mot. to Compel and Request for Attorney Fees ("April Order") 1–2, Doc. No. 448.)  The court permitted the Relator to identify the basis for his allegation that the procedures were medically unnecessary "by category" but ordered that he "identify the reasons, patient by patient."  (*Id.* at 3.)  The court ordered compliance with respect to the 339 patients the parties agreed received PFO/ASD closures, but also ordered the Relator to update his responses within thirty days of learning of "additional PFO/ASD closures."  (*Id.* at 1–2.)

In response to the court's order, the Relator provided a spreadsheet with columns for each procedure, account number, patient date of birth, procedure code, date of service, location of service, billed amount, paid amount, availability of the underlying medical records, and the reason the Relator views the procedure as unnecessary.  (*See* Ex. 2 to Sorensen Mot., Spreadsheet Excerpt, Doc. No. 477-3.)  The spreadsheet "adds over 500 new patients beyond those listed in the Third Amended Complaint."  (Sorensen Mot. 2, Doc. No. 477.)  Where the Relator had the underlying medical records for a patient, he also listed a categorical reason the PTO closure was improper (i.e., "No Neuro Diagnosed Stroke/TIA of Any Kind," "No Neuro Consult," "PFO Listed as an ASD").  (*See* Ex. 2 to Sorensen Defs.' Mot. to Compel, Spreadsheet Excerpt, Doc. No. 477-3.)  For each patient, the Relator included a column indicating whether an unnecessary procedure occurred before closure, concurrent with the closure, or after closure.

---

[8] Paragraph 124 of the Third Amended Complaint includes a "listing of some of those medically unnecessary PFO closures and related procedures that were billed to Medicare, Medicaid, or TRICARE by Sorensen . . . along with patient account numbers, dates of service, procedure codes and the amounts billed to the federal payer."  (Third Am. Compl. ¶ 124, Doc. No. 421.) Paragraph 125 contains a more detailed description of seven patients for whom the Relator alleges that Dr. Sorensen did medically unnecessary closures.  (*Id.* ¶ 125.)

(*Id.*)  In addition, the Relator provided a generalized statement for each patient indicating the PFO closures were: (1) investigational and experimental; (2) not established as safe and effective; and (3) had not been "demonstrated to be at least as beneficial as alternative existing forms of treatment."  (*See* Ex. 3 to Sorensen Defs.' Mot. to Compel, Statement, Doc. No. 477-4.) Some columns in the spreadsheet were incomplete because the Relator possesses limited medical records.  (Relator's Resp. in Opp'n to Defs.' Expedited Mot. to Compel Compliance with the Court's Order and Request for Sanctions and Fees ("Opp'n to Sorensen Defs.' Mot. to Compel") 2, Doc. No. 488.)

The Sorensen Defendants seek more.  They assert that the Relator's statement regarding medical necessity does not "support [his] false claims allegations wherein [he] allege[d] Defendants falsified records and/or performed medically unnecessary procedures for each patient."  (Sorensen Defs.' Mot. to Compel 2, Doc. No. 477 (internal quotations omitted).)  At the June 23 hearing, the Sorensen Defendants argued the Relator was required, as part of supplementation ordered by the court, to "go patient by patient in that third amended complaint[,] . . . tell us who they were, and tell us which record was falsified."  (Tr. of Mot. Hearing at 58:11–15, Doc. No. 515.)  When asked where in Interrogatories 6 or 10 this information was sought, the Sorensen Defendants argued Interrogatory 6 incorporates Interrogatory 5, which asked the Relator to identify false records, documents, or statements.  (*Id.* at 78:10–23.)  The Sorensen Defendants also complain that the Relator's supplemental response includes patients who had no closure performed even though the Relator has acknowledged that his case focuses on patients who received PFO/ASD closures.  (Sorensen Defs.' Mot. to Compel 2, Doc. No. 477; Tr. of Mot. Hearing at 68:24–69:3, Doc. No. 515.)  Accordingly, the Sorensen

Defendants seek, in the alternative, an order limiting the "Relator to the patients in the [Third Amended Complaint] with closures." (Sorensen Defs.' Mot. to Compel 3, Doc. No. 477.)

In response, the Relator asserts that the Sorensen Defendants failed to identify the deficiency in his disclosures. (Opp'n to Sorensen Defs.' Mot. to Compel 1, Doc. No. 488.) The Relator contends that because "the same flaws are present in nearly every closure procedure," the general statement regarding medical necessity for every patient in the spreadsheet was appropriate. (*Id.* at 2.) Any gaps in the spreadsheet, according to the Relator, are due to the Sorensen Defendants' failure to disclose medical records for a significant number of patients upon whom Dr. Sorensen performed closures. (*Id.*) The Relator's response to Interrogatory No. 10 clarifies that the non-closure procedures listed on the spreadsheet "were done either in advance of, concurrently with, or after the [medically unnecessary] closures." (Ex. 1 to Sorensen Defs.' Mot. to Compel, Relator's Third Am. Resp. to Some of the Sorensen Defs. First Set of Interrogs. 31, Doc. No. 477-2.) Finally, the Relator argued at the June 23 hearing that Interrogatory 5 was neither the subject of the Sorensen Motion, nor was it addressed during the meet-and-confer process. (*See* Tr. of Mot. Hearing at 79:23–80:6, Doc. No. 515.)

Having reviewed the Relator's supplemental responses to Interrogatories 6 and 10 and excerpts of the spreadsheet produced, the court denies the Sorensen Defendants' Motion to Compel (Doc. No. 477). Consistent with the court's April 8, 2020 order, the supplemental responses outline by category the reason each patient's closure was medically unnecessary in each instance where the Relator has the underlying medical record. (*See* Ex. 2 to Sorensen Defs.' Mot. to Compel, Spreadsheet Excerpt, Doc. No. 477-3.) Although gaps exist in the Relator's responses to date, the disclosures appear to be made in good faith based on the information currently in his possession. Generalized statements regarding medical necessity are allowable under the court's April 8, 2020 order. (*See* April Order 3, Doc. No. 448.) The extent

to which this level of generality is either factually incorrect or legally inadequate is an issue for summary judgment or trial, rather than a discovery determination. The Relator has a continuing obligation to supplement his interrogatory responses, consistent with the court's April 8, 2020 order, and is expected to provide that supplementation upon obtaining and reviewing additional medical records from the Sorensen Defendants or third parties. If the Relator fails to do so, the Sorensen Defendants may, of course, file another motion to compel.

To the extent the Sorensen Defendants seek greater specificity with respect to alleged false records, documents, or statements made by the Sorensen Defendants in response to Interrogatory No. 5, as raised at the June 23 hearing, this request is denied. It is not squarely before the court. Interrogatory 5 is not included in the exhibits or materials submitted for the court's consideration and it was not raised in the parties' briefing. (Ex. 1 to Sorensen Defs.' Mot. to Compel, Relator's Third Am. Resps. to Some of the Sorensen Defs.' First Set of Interrogs., Doc. No. 477-1 & 477-2.) The court's April 8, 2020 order addresses the Relator's compliance with Interrogatories 6, 8, and 10, not Interrogatory 5. (*See* April Order, Doc. No. 448.)

For these reasons, the court denies the Sorensen Defendants' Expedited Motion to Compel Compliance with the Court's Order and Request for Sanctions and Fees, (Doc. No. 477). Likewise, the court denies the Sorensen Defendant's alternative request to limit the Relator's discovery to patients with closures listed in the Third Amended Complaint, given the court's order allowing the Relator to amend his complaint as well as the potential relevance of records not individually listed in the pleadings. The court finds the Relator's explanation as to why non-closure procedures are listed to be sufficient. Because the court denies the Sorensen Defendants' motion, it also denies their request for fees. The court declines to award the Relator his fees in

opposing the motion, finding that the Sorensen Defendants were substantially justified in bringing their motion.  *See* Fed. R. Civ. P. 37(a)(5)(B).

**F.  Relator's Emergency Motion Filed Under Seal for Leave to Supplement (Doc. No. 505)**

The court next considers the Relator's Emergency Motion Filed Under Seal for Leave to Supplement (Doc. No. 505).  The Relator filed this motion on the eve of the court's June 23 hearing.  With his motion, the Relator seeks to add as an exhibit to all his pending motions and responses the testimony of Patricia Phillips, the former billing manager at SCG and its 30(b)(6) designee.  (Mot. to Suppl. 3, Doc. No. 505.)  While he makes no argument in his motion, the Relator highlights transcript excerpts purporting to show Ms. Phillips was ill-prepared for the deposition.  (*Id.* at 3–5.)  The Sorensen Defendants opposed the motion at the hearing, arguing it failed to conform to the short form discovery requirements of Local Rule DUCivR 37-1.  (Tr. of Mot. Hearing 8:8–13, Doc. No. 515.)  The Sorensen Defendants also argued that the Relator misrepresented the 30(b)(6) deposition because it included additional designees besides Ms. Phillips.  (*Id.* at 8:14–21.)  Due to this, they argued, the deposition excerpt provides an incomplete picture to the court.  (*Id.* at 9:18–25.)

Given the late filing of the Motion to Supplement and the Sorensen Defendants' inability to provide a more substantive reply, the court denies the motion (Doc. No. 505) without prejudice.  To the extent the Relator believes SCG's 30(b)(6) designees were inadequately prepared and their responses were insufficient, he may meet and confer with the Sorensen Defendants on this topic and move to compel if necessary.

**G.  Relator's Motion to Modify the Court's Prior Order Granting an Extension of Expert Deadlines (Doc. No. 519)**

Finally, after the court's June 23, 2020 hearing on these matters, the Relator filed a Motion to Modify the Court's Prior Order Granting an Extension of Expert Deadlines ("Expert

Deadline Mot.") (Doc. No. 519).  With his motion, the Relator seeks an extension of time to designate experts and serve expert reports from September 5, 2020 to October 16, 2020, or "alternatively, another date that the [c]ourt finds fair and appropriate."  (*Id.* at 4; *see also* Order Granting Relator's Mot. for Extension of Deadlines for Expert Discovery, Doc. No. 514.)  As justification for the requested extension, the Relator cites the motions pending and resolved in this order.  (Expert Deadline Mot. 2, Doc. No. 519.)  Specifically, the Relator argues that an extension of time for designating and submitting expert reports is necessary so that he can "provide his experts additional medical records."  (*Id.* at 3.)  The Sorensen Defendants oppose the extension, stating that the Relator's motion does not comply with DUCivR 37-1 and that the Relator has not utilized the time already granted by the court for additional expert discovery. (Defs.' Opp'n to Relator's Mot. to Modify the Court's Prior Order Granting an Extension of Expert Deadlines 2, Doc. No. 521.)

Given the discovery ordered here, the court agrees that additional time is necessary for expert discovery, including designation of experts and preparation of expert reports. Consequently, the court GRANTS the Relator's Expert Deadline Motion and ORDERS the parties to submit either a stipulated proposed schedule or, if the parties are unable to agree, separate proposed schedules within fourteen (14) days of the date of this order.  The proposed schedule(s) should extend the deadline for the party bearing the burden of proof to provide expert disclosures and reports to at least October 16, 2020 or another workable date given the discovery ordered here.

## **CONCLUSION**

For the reasons set forth above, the court (1) GRANTS the Relator's Motion for Leave to Amend Relator's Third Amended Complaint for Damages and Other Relief Under the False Claims Act (31 U.S.C. § 3730) (Doc. No. 460); (2) DENIES the Sorensen Defendants'

Expedited Motion to Quash or Limit Relator's FRCP 45 Subpoena to St. Mark's Hospital (Doc.

No. 458); (3) GRANTS the Relator's Amended Expedited Motion to Compel Defendants to

Produce Responsive Medical Records (Doc. No. 459); (4) DENIES the Relator's Expedited

Motion to Compel Defendant Sherman Sorensen, M.D. to Provide Complete and Responsive

Interrogatory Answers (Doc. No. 474); (5) DENIES the Relator's Expedited Motion to Compel

Defendant Sorensen Cardiovascular Group to Provide Complete and Responsive Interrogatory

Answers (Doc. No. 476); (6) DENIES the Sorensen Defendants' Expedited Motion to Compel

Compliance with the Court's Order and Request for Sanctions and Fees (Doc. No. 477); (7)

DENIES the Relator's Emergency Motion Filed Under Seal for Leave to Supplement (Doc. No.

505); and (8) GRANTS Relator's Motion to Modify the Court's Prior Order Granting an

Extension of Expert Deadlines (Doc. No. 519).

The court ORDERS (1) the Relator to file his Fourth Amended Complaint (Doc. No. 460-

1) within seven (7) days of this order; and (2) the Sorensen Defendants to supplement their

responses to Relator's Request for Production No. 26, as outlined above, within thirty (30) days

of the date of this order.  Finally, to account for the additional discovery ordered here, the parties

are ORDERED to file either a stipulated proposed schedule or, if the parties are unable to agree,

separate proposed schedules within fourteen (14) days of the date of this order.  The proposed

schedule(s) should extend the deadline for the party bearing the burden of proof to provide

expert disclosures and reports to at least October 16, 2020 or another workable date.

DATED this 20th day of August, 2020.

BY THE COURT:

_Daphne A. Oberg_
_____
Daphne A. Oberg
United States Magistrate Judge